## MATTER OF FRENTESCU

### In Exclusion Proceedings

#### A-23364219

*Decided by Board June 23, 1982*

(1) An alien who has been convicted of a crime involving moral turpitude is not statutorily ineligible for asylum and withholding of deportation.

(2) Withholding of deportation and asylum are not available to an alien who, having been convicted by a final judgment of a "particularly serious crime," constitutes a danger to the community of the United States.

(3) A "particularly serious crime" under section 243(h)(2)(B) of the Immigration and Nationality Act, 8 U.S.C. 1253(h)(2)(B), is not the equivalent of a "serious nonpolitical crime" under section 243(h)(2)(C) of the Act, and is, in fact, more serious than a "serious nonpolitical crime."

(4) A determination of whether a crime is a "particularly serious crime" will depend upon the specific facts in each case and, in judging the seriousness of a crime, the Board of Immigration Appeals will consider such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.

EXCLUDABLE:  Act of 1952—Sec. 212(a)(9) [8 U.S.C. 1182(a)(9)] — Convicted of a crime involving moral turpitude

ON BEHALF OF APPLICANT:
Juan M. Soliz, Esquire
1661 S. Blue Island Avenue
Chicago, Illinois 60608

ON BEHALF OF SERVICE:
Samuel Der-Yeghiayan
General Attorney

BY:  Milhollan, Chairman; Maniatis, Dunne, Morris, and Vacca, Board Members

In an oral decision on June 9, 1981, the immigration judge found the applicant excludable under section 212(a)(9) of the Immigration and Nationality Act, 8 U.S.C. 1182(a)(9), as an alien who had been convicted of a crime involving moral turpitude, denied his applications for asylum and withholding of deportation, and ordered that he be excluded and deported from the United States. The applicant has appealed from the denial of asylum and withholding of deportation. The record will be remanded.

The applicant, a 27-year-old single male alien, is a native and citizen of Romania. He was indefinitely paroled into the United States on April 9,

1980, pursuant to section 212(d)(5) of the Act. On November 20, 1980, he was convicted in the Circuit Court of Cook County, Illinois, of burglary, in violation of Chapter 38, section 19-1 of the Illinois Revised Statutes.[1] He was sentenced to time served (3 months) and was placed on probation for one year.

At his hearing, the applicant, through counsel, admitted that he had been convicted of the crime of burglary in Illinois. Burglary with intent to commit theft is a crime involving moral turpitude. *See Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981); *Matter of Leyva*, 16 I&N Dec. 118 (BIA 1977); *Matter of Scarpulla*, 15 I&N Dec. 139 (BIA 1974). Thus, the applicant was properly found excludable under section 212(a)(9) of the Act.

Because the applicant submitted an application for asylum at the initial hearing, the hearing was adjourned in order to obtain the Department of State's advisory opinion. This opinion, in pertinent part, advises as follows:

> In our view, the likelihood of persecution upon return to Romania was established when Mr. Frentescu was granted refugee status and paroled into the United States in 1980. Since that time, conditions have not changed in Romania and the forcible return of Mr. Frentescu to that country would most likely entail serious consequences, such as imprisonment, for him.

The immigration judge considered the Department of State's letter but found that the applicant was ineligible for asylum because he had been convicted of burglary, a serious crime involving moral turpitude. The immigration judge added that he would deny asylum, as a matter of discretion, because the applicant had committed a crime involving moral turpitude while in the country that gave him refuge.

The only issue on appeal is whether the immigration judge properly denied the applicant's request for asylum and withholding of deportation. The applicant contends that his conviction for burglary does not bar him from eligibility for asylum inasmuch as burglary is not a "particularly serious crime" and, even if it is, he is not a danger to the community.

Withholding of deportation as well as asylum is not available to an alien who, having been convicted by a final judgment of a "particularly serious crime, constitutes a danger to the community of the United States." Section 243(h)(2)(B) of the Act; 8 C.F.R. 208.8(f)(iv).

In order to determine whether the applicant in this proceeding is eligible for relief, we first must ascertain the meaning of "particularly serious crime" as used in the Immigration and Nationality Act. Although the specific language chosen by Congress reflects that a "particularly serious crime" is more serious than a "serious nonpolitical crime," nei-

---

[1] As relevant, this section provides that a person commits burglary when without authority he knowingly enters or without authority remains within a building, or any part thereof, with intent to commit therein a felony or theft.

ther the Act nor the pertinent legislative history,[2] the 1967 Protocol Relating to the Status of Refugees,[3] or the Handbook on Procedures and Criteria for Determining Refugee Status (Geneva, 1979) specifically defines a "particularly serious crime." In fact, the only definition of crime, found in the Handbook, is the definition of a "serious nonpolitical crime," which is as follows:

> What constitutes a "serious" non-political crime for the purposes of this exclusion clause is difficult to define, especially since the term "crime" has different connotations in different legal systems. In some countries the word "crime" denotes only offences of a serious character. In other countries it may comprise anything from petty larceny to murder. In the present context, however, a "serious" crime must be a capital crime or a very grave punishable act. Minor offences punishable by moderate sentences are not grounds for exclusion under Article 1 F (b)[4] even if technically referred to as "crimes" in the penal law of the country concerned.[5]

> A refugee committing a serious crime in the country of refuge is subject to due process of law in that country. In extreme cases, Article 33 paragraph 2 of the Convention permits a refugee's expulsion or return to his former home country if, having been convicted by a final judgement of a "particularly serious" common crime, he constitutes a danger to the community of his country of refuge.[6]

The concept of a "particularly serious crime" is one that is of first impression before this Board. No definition or interpretation of a "particularly serious crime" is contained in the Act, the Protocol, or the Handbook. The term is not analogous to any of the crimes specified in the Act.[7] We note that when Congress classified crimes within sections 212 and 242 of the Act, no reference was made to a "particularly serious

---

[2] *See* H.R. Rep. No. 96-781, 96th Cong., 2d Sess. 20, *reprinted in* [1980] U.S. Code Cong. & Ad. News 160, 161.

[3] 19 U.S.T. 6223 (Part 5 1968), T.I.A.S. No. 6577, 606 U.N.T.S. 267.

[4] Reference is made to Article 1 F (b) of the 1951 Convention Relating to the Status of Refugees, 189 U.N.T.S. 137. Under this provision, status as a refugee is not applicable to any person with respect to whom there are serious reasons for considering that he has committed a serious nonpolitical crime outside the country of refuge prior to his admission to that country as a refugee.

[5] Paragraph 155.

[6] Paragraph 154.

[7] We disagree with the immigration judge's conclusion that the applicant is statutorily barred from withholding of deportation and asylum because he had been convicted in the United States of a crime involving moral turpitude. We do not believe Congress intended for section 243(h)(2)(B) of the Act or for 8 C.F.R. 208.8(f)(iv) to be so construed. Neither section 243(h)(2)(B) nor 8 C.F.R. 208.8(f)(iv) specifically prohibits an alien who has been convicted of a crime involving moral turpitude from obtaining relief. Further, no cross-reference has been made to the section of the Act which excludes an alien who has been convicted of a crime involving moral turpitude. *See* section 212(a)(9) of the Act; *cf.* section 241(a)(4) of the Act (deportability). Moreover, the immigration judge apparently incorporated the language of section 243(h)(2)(C) and 8 C.F.R. 208.8(f)(v) (whereby an alien is not eligible for withholding of deportation or asylum if there are serious reasons for considering that he has committed a serious nonpolitical crime outside the United States prior to his arrival) into section 243(h)(2)(B) of the Act. *See generally Matter of Ballester-Garcia,*

246

crime." No administrative history or case law has been presented before this Board defining or otherwise interpreting "particularly serious crime." Thus, we cannot set forth an exact definition of a "particularly serious crime" at this time. However, there are certain attributes of this concept which can be characterized in general terms. At the outset, it should be clear that a "particularly serious crime" is not the equivalent of a "serious nonpolitical crime." Further, a "particularly serious crime" is more serious than a "serious nonpolitical crime," although many crimes may be classified both as "particularly serious crimes" and as "serious nonpolitical crimes." While there are crimes which, on their face, are "particularly serious crimes" or clearly are not "particularly serious crimes," the record in most proceedings will have to be analyzed on a case-by-case basis. In judging the seriousness of a crime, we look to such factors as the nature of the conviction, the circumstances and underlying facts of the conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community. Crimes against persons are more likely to be categorized as "particularly serious crimes." Nevertheless, we recognize that there may be instances where crimes (or a crime) against property will be considered as such crimes.

We find that this applicant is not statutorily ineligible for asylum or withholding of deportation as he is not an alien whose conviction comes within the provisions of section 243(h)(2)(B) of the Act or within the provisions of 8 C.F.R. 208.8(f)(iv). On the record before us, we do not find that the applicant has been convicted of a "particularly serious crime." We do not condone his crime, in essence, burglary with intent to commit theft. However, considering the totality of the circumstances before us concerning this crime, we do not find it to be of such a particularly serious nature as to preclude relief. The crime was an offense against property, rather than against a person. Although the applicant did enter a dwelling, there is no indication that the dwelling was occupied or that the applicant was armed; nor is there any indication of an aggravating circumstance. Further, the applicant received a suspended sentence after spending a relatively short period of time in prison (3 months). Such sentence, as viewed by the state circuit court judge, reflects upon the seriousness of the applicant's danger to the community.

In view of our finding, we believe that the record should be returned to the immigration judge for a determination of whether the applicant

---

17 I&N Dec. 592 (BIA 1980); *Matter of Rodriquez-Palma,* 17 I&N Dec. 465 (BIA 1980). He found that the applicant had been convicted of a "serious crime" rather than a "particularly serious crime" as required by section 243(h)(2)(B) of the Act and by 8 C.F.R. 208.8(f)(iv).

has established a well-founded fear of persecution.[8] Accordingly, the record will be remanded.

ORDER: The record is remanded to the immigration judge for further proceedings consistent r `... the` foregoing opinion and the entry of a new decision.,

FURTHER ORDER: Should a decision on remand be adverse to the applicant, an appropriate order shall be entered and the record shall be certified to us for review.

---

[8] We are aware that the immigration judge denied asylum as a matter of discretion. However, under the facts before us, we believe that it was inappropriate to deny discretionary relief.