89 F.3d 846
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ahmad Kheir ABULFEILAT, Defendant-Appellant.
 No. 95-50446.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1996.
Decided June 25, 1996.
 
 Before: WIGGINS, THOMPSON, TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Ahmad Kheir Abulfeilat is presently serving a thirty-month sentence imposed by the district court after he pleaded guilty to one count of conspiracy to export Iraqi oil in violation of 18 U.S.C. § 371. He appeals his sentence, arguing that the district court erred in sentencing him for evasion of export controls under USSG § 2M5.1(a)(1), which requires a finding that national security or nuclear proliferation controls were evaded. He contends his offense of selling oil from Iraq was not a violation of national security and therefore the court should have applied USSG § 2M5.1(a)(2), which concerns all other evasion of export controls, such as export license violations. He also contends that the district court erred in not departing downward, pursuant to USSG § 2X1.1(b)(2), for an incomplete conspiracy. We AFFIRM the sentence imposed by the district court.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 3
 We review the district court's interpretation and application of the Sentencing Guidelines de novo. United States v. Basinger, 60 F.3d 1400, 1409 (9th Cir.1995). We review the court's underlying factual findings for clear error. Id.
 
 II. BASE OFFENSE LEVEL
 
 4
 The district court correctly concluded that there is no Sentencing Guidelines provision that specifically applies to appellant's offense[1] and that USSG § 2M5.1 (Evasion of Export Controls) is most analogous to appellant's convicted offense. See USSG § 2X5.1 ("If the offense is a felony ... for which no guideline expressly has been promulgated, apply the most analogous offense guideline.").[2] Appellant contends that the district court erred in applying § 2M5.1(a)(1), which provides for a base offense level of 22, instead of § 2M5.1(a)(2), which provides for a base offense level of 14, in determining the base offense level for his sentence.[3] For the following reasons, the district court properly sentenced appellant under USSG § 2M5.1(a)(1).
 
 
 5
 Appellant's contention that national security controls were not evaded because his offense merely involved "a conspiracy to violate a commerce embargo" is without merit. Although the Sentencing Guidelines do not define "national security," Executive Order No. 12724, which prohibits "[a]ny dealing by a United States person related to property ... intended for exportation from Iraq to any country," was issued to protect national security. Exec. Order No. 12724 § 2(c). Specifically, Executive Order No. 12724 modified Executive Order No. 12722, in which the President declared a national emergency in response to the Iraqi invasion of Kuwait, by further setting forth the terms of the national emergency. See Exec. Order No. 12724. Executive Order No. 12722, entitled "Blocking Iraqi Government Property and Prohibiting Transactions with Iraq," was based on a finding that "the policies and actions of the Government of Iraq constitute an unusual and extraordinary threat to the national security and foreign policy of the United States[,]" and a national emergency was declared "to deal with that threat." See Exec. Order No. 12722, 55 Fed.Reg. 31803 (1990). Hence, the express purpose of the prohibitions contained in both executive orders, including the prohibition against certain commercial transactions with Iraq, is to protect the national security. Cf. 50 U.S.C.S. Appx. § 2402(4) (stating that EAA's purpose is to further national security objectives and economic growth). Accordingly, a violation of the prohibitions in Executive Order No. 12724 is a violation of a national security control.
 
 
 6
 Appellant's offense of conspiracy to export Iraqi oil clearly violates two provisions in Executive Order No. 12724, which prohibit:
 
 
 7
 (c) Any dealing by a United States person related to property of Iraqi origin exported from Iraq after August 6, 1990, or property intended for exportation from Iraq to any country, or exportation to Iraq from any country, or any activity of any kind that promotes or is intended to promote such dealing; ...
 
 
 8
 (h) Any transaction by any United States person that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in this order.
 
 
 9
 Exec. Order No. 12724 §§ 2(c), 2(h) (emphasis added). Based on the language of the order, any transaction or dealing involving Iraqi oil is prohibited, regardless of whether the oil was successfully transported. Thus, the agreement to export the oil alone was sufficient to violate the Order by evading the national security controls in the Order.
 
 
 10
 Appellant urges us to consider USSG § 2M5.2, which provides a base offense level of 22 for the export of certain defense articles such as military aircraft, missiles, rockets, and bombs. See USSG § 2M5.2(a), comment. (n. 1). He argues that his commercial transaction does not warrant the same base offense level as the exportation of the military equipment. The comparison proposed by appellant is inappropriate. Executive Order No. 12724 recognizes that prohibiting commercial dealings with Iraq, which are not limited to transfers of military weapons, is one type of national security control.
 
 
 11
 Lastly, application of the rule of lenity, requiring that a criminal statute be construed narrowly where its application to certain conduct is ambiguous (see United States v. Jenkins, 58 F.3d 611, 613 (11th Cir.1995)), is also inappropriate in this case. There is no such ambiguity here. As stated above, appellant's conspiracy itself clearly violated Executive Order No. 12724 and the prohibited conducted represents an evasion of national security controls, as set forth in Executive Order No. 12724. Similarly, § 2M5.1 is not so ambiguous that the rule of lenity requires application of the lesser penalty. See United States v. Cambra, 933 F.2d 752, 756 (9th Cir.1991). Because there is insufficient ambiguity in this case, the rule of lenity does not come into play.
 
 III. APPLICATION OF SECTION 2X1.1(b)(2)
 
 12
 Appellant contends that the district court erred in refusing to depart downward three levels for an incomplete conspiracy, pursuant to USSG § 2X1.1(b)(2).[4] He incorrectly characterizes this request as a request for downward departure, as opposed to an adjustment of the base level.[5] Notwithstanding appellant's waiver of such an adjustment in his plea agreement, upon his oral request for a reduction in the base offense level at the sentencing hearing, the district court denied the request without noting that such a request was a prohibited request for an adjustment or stating that it was treating the request as a motion for a downward departure.[6] Instead, the court stated that the offense was the agreement itself and, therefore, rejected appellant's contention that "there were several steps that needed to be completed." Based on this finding, the district court concluded that the three-level reduction was not applicable. We find that the court did not err in refusing to reduce the base offense level for an incomplete conspiracy because, as discussed above, the conspiracy was complete: the agreement to export the oil violated Executive Order No. 12724's prohibition against "any dealing by a United States person related to property ... intended for exportation from Iraq." Exec. Order No. 12724 § 2(c).
 
 CONCLUSION
 
 13
 For the foregoing reasons, we AFFIRM the sentence imposed by the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Appellant pleaded guilty to:
 Conspiring with defendant Saed Abulfeilat and others to deal and engage in activity promoting and intending to promote dealing in oil of Iraqi origin, and engaging in transactions that had the purpose of evading and avoiding the prohibitions set forth in Executive Order No. 12724, in violation of Title 50, United States Code, Sections 1702 and 1705(b), and Title 31, Code of Federal Regulations, Part 575--Iraqi Sanctions Regulations.
 Plea Agreement at 2. The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-06, authorizes the president to regulate "transactions involving[ ] any property in which any foreign country or a national thereof has any interest." Id. § 1702(a)(1)(B). The IEEPA also imposes criminal penalties for willful violation of executive orders issued under the IEEPA. Id. § 1705(b). Pursuant to the IEEPA, former President George Bush issued Executive Order No. 12724, entitled "Blocking Iraqi Government Property and Prohibiting Transactions with Iraq," in response to the Iraqi invasion of Kuwait. See Exec. Order No. 12724, 55 Fed.Reg. 33089 (1990); see also Notice of Continuation of Iraqi Emergency, 60 Fed.Reg. 39099 (1995). The Executive Order was formally implemented through regulations, published in the Code of Federal Regulations, 31 C.F.R., pt. 575. See 31 C.F.R. §§ 575.206 (Prohibited dealing in property), 575.209 (Prohibited performance of contracts), 575.211 (Evasions; attempts; conspiracies).
 
 
 [2]
 Section 2M5.1 expressly applies to violations of the Export Administration Act ("EAA"), 50 U.S.C.S. Appx. §§ 2401-20, which regulates the export of goods from the United States in order to encourage trade by minimizing uncertainties in export control policy and to protect national security. Id. § 2402
 
 
 [3]
 Section 2M5.1 provides:
 (a) Base Offense Level (Apply the greater):
 (1) 22, if national security or nuclear proliferation controls were evaded; or
 (2) 14.
 USSG § 2M5.1 (1995). Appellant incorrectly reads § 2M5.1(a)(1) as requiring evasion of national security, rather than an evasion of national security controls.
 
 
 [4]
 Section 2X1.1. (b)(2) applies to conspiracies not covered by a specific offense guideline like the present conspiracy. See USSG § 2X1.1(c)(1) ("Where ... conspiracy is expressly covered by another offense guideline section, apply that guideline section."). Under § 2X1.1(a), the district court determines the base offense level from the guideline for the underlying substantive offense (or the analogous provision per USSG § 2X5.1). Section 2X1.1(b)(2) provides for a reduction of three levels, unless the court determines that appellant "or a co-conspirator completed all the acts they believed necessary on their part for the successful completion of the substantive offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control." USSG § 2X1.1(b)(2)
 
 
 [5]
 " 'Adjustments' and 'departures' are distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines.... Departures, on the other hand, are sentences imposed outside of the Guidelines." United States v. Joetzki, 952 F.2d 1090, 1097 (9th Cir.1991); see also United States v. Fontenot, 14 F.3d 1364, 1371 (9th Cir.) ("Adjustments of the base level, unlike departures from the sentencing range, are not discretionary."), cert. denied, 115 S.Ct. 431, 130 L.Ed.2d 343 (1994). The Sentencing Commission took into account an incomplete conspiracy by providing for the three-level decrease in the base offense level in § 2X1.1(b)(2). See USSG § 2X1.1(b)(2). Hence, the requested reduction in the offense level is not a departure from the Sentencing Guidelines
 
 
 [6]
 By not objecting to appellant's request for an adjustment as prohibited by the plea agreement before the district court, the government arguably waived any objection to the requested adjustment on this basis. We note that neither the district court nor the government asserts that appellant's request for an adjustment constitutes a breach of the plea agreement