**Ahmad Kheir ABULFEILAT,**
**Petitioner,**

v.

**Alberto R. GONZALES, Attorney**
**General, Respondent.**

**Ahmad Kheir Abulfeilat, Petitioner,**

v.

**Alberto R. Gonzales, Attorney**
**General, Respondent.**

Nos. 04–74863, 05–72856.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 2007.

Filed Aug. 2, 2007.

Louis A. Gordon, Esq., Law Offices of Louis A. Gordon, Los Angeles, CA, for Petitioner.

CAC–District Counsel, Esq., Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. Lefevre, Chief Counsel, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, Manuel A. Palau, Terri J. Scadron, Esq., Hillel Smith, U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: D.W. NELSON, REINHARDT, and RYMER, Circuit Judges.

## MEMORANDUM *

Ahmad Kheir Abulfeilat ("Abulfeilat"), a native and citizen of Jordan, petitions for

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

review of the Board of Immigration Appeals' (BIA's) decision finding him: (1) deportable as an alien who committed a crime involving moral turpitude, (2) ineligible for asylum and withholding of deportation because of the finding that he committed a particularly serious crime, (3) ineligible for protection under the Convention Against Torture (CAT), (4) ineligible for a waiver of deportation under former Immigration and Nationality Act (INA) section 212(c) and of inadmissibility under INA section 212(h), and (5) ineligible for voluntary departure. We grant the petition for review in part and deny it in part and remand the case to the BIA.

## I. Crime Involving Moral Turpitude

■ Abulfeilat was convicted of conspiring to violate Executive Order No. 12724 ("E.O. 12724"), which prohibited transactions with Iraq. The BIA found Abulfeilat deportable because he had committed a crime involving moral turpitude within five years after the date of admission for which a sentence of one year or longer was imposed. *See* 8 U.S.C. § 1227(a)(2)(A)(i). We agree. We hold that under the modified categorical approach, Abulfeilat's specific conduct to which he pled guilty shows that he had an intent to defraud the United States government. *See Carty v. Ashcroft,* 395 F.3d 1081, 1082 (9th Cir.2005) (holding that crimes involving fraud are crimes involving moral turpitude). In particular, Abulfeilat used fraudulent documents as part of the commission of the crime and the United States would have suffered a national security harm if the crime had been concluded. We therefore deny the petition for review as to this claim.

## II. Asylum and Withholding of Deportation

■ The BIA adopted the findings and reasoning of the Immigration Judge ("IJ")

and held that Abulfeilat was convicted of a particularly serious crime and that therefore he was not eligible for asylum or withholding of deportation. "When the Attorney General decides that the alien's offense was a 'particularly serious crime' [under 8 U.S.C.] § 1231(b)(3), we lack jurisdiction to review such a decision because it is discretionary." *Unuakhaulu v. Gonzales,* 416 F.3d 931, 935 (9th Cir.2005). However, "[w]hile we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether the BIA applied the correct legal standard in making its determination." *Afridi v. Gonzales,* 442 F.3d 1212, 1218 (9th Cir.2006). The BIA in *In re Frentescu,* 18 I. & N. Dec. 244 (BIA 1982), established the legal standard for determining whether a crime is particularly serious. The BIA explained that the determination requires a case-by-case analysis of "such factors as the nature of the conviction, the circumstances and underlying facts of conviction, the type of sentence imposed, and, most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community." *Id.* at 247.

The IJ examined the first two *Frentescu* factors, the nature of the crime of conviction and the underlying facts and circumstances of the conviction, in concluding that Abulfeilat had committed a particularly serious crime. We hold that considering these two factors alone was insufficient to support the particularly serious crime finding. As the BIA explained in *Frentescu,* whether the type and circumstances of the crime indicate that the alien will be a danger to the community is the most important factor. Emphasis on this factor makes sense in light of the forward-looking nature of the particularly serious crime determination. The purpose of the particularly serious crime determination is to

ascertain whether the alien "*constitutes a danger to the community*" that would override his eligibility for asylum and withholding of deportation relief. 8 U.S.C. § 1158(b)(2)(A)(ii) (emphasis added). The nature of the conviction and the circumstances underlying the facts of conviction is evidence of the continued danger that a particular alien poses, but as the BIA recognized in *Frentescu*, an evaluation of whether the type and circumstances of the crime indicate that he will be a continued danger is the most important factor in determining whether the crime was particularly serious.

We therefore grant the petition for review on this issue and remand to the BIA to consider the factor cited in *Frentescu* as most important, whether the type and circumstances of Abulfeilat's crime indicate that he would pose a danger to the community.

### III.  CAT Claim

Abulfeilat claims that he is eligible for CAT Relief because he will be tortured if he returns to Jordan due to his conversion to Christianity. "To receive the protection of the CAT, an alien must prove that it is more likely than not that the alien will be tortured if removed." *Almaghzar v. Gonzales*, 457 F.3d 915, 923 (9th Cir.2006) (citing 8 C.F.R. § 208.16(c)(2)). The BIA held that Abulfeilat was not eligible for relief under CAT. We disagree with the BIA's reasoning supporting this conclusion.

■ The BIA and IJ misconstrued the basis of Abulfeilat's CAT claim. Abulfeilat contends that he is eligible for CAT relief because it is more likely than not that he will be persecuted because of his conversion to Christianity. Neither the IJ nor the BIA questioned his conversion to Christianity, as indicated by the agency's recognition of the Christian baptismal certificate. Instead, the IJ and the BIA

questioned whether Abulfeilat is truly a devout Christian today, considering his practice of, and purported conversion to, Islam while in prison beginning in 1995. The issue of whether he is a devout Christian today is ultimately irrelevant to Abulfeilat's CAT claim as demonstrated by the expert testimony of Professor Dekemjian and the letter from Dr. Daniel Pipes, which discussed the serious consequences to a person in Jordan found to have converted to Christianity from Islam.

In addition, the BIA applied the wrong standard to the CAT claim. The BIA held that to prove that the harm feared would be inflicted with the acquiescence of a public official or other person acting in an official capacity, Abulfeilat would have to "demonstrate that Jordanian government officials are willfully accepting of any Muslim group's torturous activities." We explicitly overruled the standard defining acquiescence as "willfully accepting of" torture in *Zheng v. Ashcroft*, 332 F.3d 1186, 1194 (9th Cir.2003). Instead, we concluded that to demonstrate acquiescence, the petitioner for CAT relief must prove "that public officials are aware of the torture." *Id.*

We therefore grant the petition for review on the CAT claim and remand to the BIA to determine whether Abulfeilat is eligible for CAT relief considering the undisputed evidence that he converted to Christianity and on the basis of the proper standard for proving acquiescence. *See INS v. Ventura*, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (concluding that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation" (citation omitted)).

### IV.  Former Section 212(c) Waiver; Section 212(h) Waiver

■ Under former Section 212(c), "[a] discretionary waiver is available to aliens

lawfully admitted for permanent residence who have accrued seven years of lawful unrelinquished domicile." *Monet v. INS,* 791 F.2d 752, 752 (9th Cir.1986) (citation and internal quotation marks omitted). The BIA held Abulfeilat did not fulfill the terms of his visa requirement and that therefore he was never lawfully admitted. We agree. It is undisputed that Abulfeilat did not fulfill the visa requirement of employment at Café Mediterranean. In light of this failure, the petitioner was not lawfully admitted. Therefore, he was not eligible for a waiver under former section 212(c).

■ In addition, the Board found that Abulfeilat did not merit waiver under INA § 212(h) as a matter of discretion and we do not have jurisdiction to review discretionary decisions of the BIA. 8 U.S.C. § 1182(h) ("No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection."); *see also Nath v. Gonzales,* 467 F.3d 1185, 1188 (9th Cir.2006).

## V. Voluntary Departure

We decline at this time to reach the issue of Abulfeilat's eligibility for voluntary departure.

## VI. Conclusion

We **DENY** Abulfeilat's petition for review of the BIA's finding that he is removable for having committed a crime involving moral turpitude.

We **GRANT** Abulfeilat's petition for review of the BIA's determination that he committed a particularly serious crime. We **REMAND** with instructions that the agency consider the factor cited in *Fren-*

*tescu* as most important, whether the type and circumstance of Abulfeilat's crime indicate that he would pose a danger to the community.

We **GRANT** Abulfeilat's petition for review of the BIA's denial of his claim for relief under the Convention Against Torture. We **REMAND** with instructions that the agency determine whether Abulfeilat is eligible for CAT relief considering the undisputed evidence that he converted to Christianity and on the basis of the proper standard for proving acquiescence.

We **DENY** Abulfeilat's petition for review of the BIA's denial of his eligibility for waiver under former section 212(c).

We decline to reach at this time the remaining decision of the BIA.

RYMER, Circuit Judge, concurring in part and dissenting in part:

Although I concur in much of the disposition,[1] I see no basis upon which to grant the petition with respect to whether Abulfeilat committed a "particularly serious crime." The immigration judge (IJ) explicitly recognized that one of the factors to consider was "whether the type and circumstance of the crime indicate that the alien would be a danger to the community," Decision and Order (July 25, 2002) at 8–9 (citing *Matter of Frentescu,* 18 I. & N. Dec. 244 (BIA 1982)), and *In re Q–T–M–T–,* 21 I. & N. Dec. 639 (BIA 1996); and Abulfeilat's crime, which would have evaded Iraqi sanctions, was unquestionably a danger to the country—thus to the "community." The IJ explained why,[2] the BIA's order embraced the explanation, and remand is needless for it is clear as can be

---

1. I concur in Parts I, III and IV.

2. Indeed, the IJ relied upon our own disposition affirming Abulfeilat's conviction, where we noted that the express purpose of the

prohibitions that Abulfeilat violated was to protect the national security. *United States v. Abulfeilat,* No. 94–50446, 1996 WL 355564, at *1 (9th Cir. June 25, 1996).

that the Board believes his crime was a threat to national security. The Board is not compelled to find otherwise, so I dissent.