GARTH, Circuit Judge,
dissenting:
The majority would affirm the BIA’s order finding Salazar’s conviction to be a “particularly serious crime” because it believes the BIA properly disregarded the IJ’s factual findings. I disagree and thus dissent.
I.
This proceeding turns on the classification of a single conviction: Salazar’s guilty plea to attempted robbery in the third degree. According to the presentence investigation report, Salazar and an unidentified accomplice robbed a taxi driver in Queens County, New York. The taxi driver told police that Salazar was inside the taxi while the accomplice followed on a bicycle; when the taxi stopped, the accomplice attacked the driver and took $87. The accomplice was never apprehended.
At the immigration hearing, however, Salazar provided a different account of events. She testified that the taxi driver gave her $20 for sex, became angry when she left the cab because he could not ejaculate after fifteen minutes, then called the police and falsely accused her of robbery as revenge. She claimed she pleaded guilty to the charge because it was Christmas and she wanted to be with her family.
The IJ determined that Salazar’s conviction was not for a “particularly serious crime.” Specifically, the IJ credited Salazar’s testimony that the taxi driver had lied, and also found that no weapon was involved and that her initial sentence was only for probation.[6] The IJ then ordered withholding of removal because he determined that Salazar “is likely to encounter persecution as a member of the extended LGBT community in Colombia.” Pet’r’s App. 13.
The BIA disagreed and reversed the IJ’s determination on the basis that the conviction was for a particularly serious crime:
The respondent’s attempt conviction requires that [s]he intended to use or threaten to use physical force upon another person, and engaged in conduct that tended to effect such use or threat of physical force. The use or threat of violence during a crime is a significant factor when determining whether a *45 crime is particularly serious. The respondent’s assertion of innocence is unavailing. The respondent stands convicted of attempted robbery and the Board cannot reassess guilt or innocence. The presentence investigation report indicates that the respondent acted in concert with another individual who grabbed a taxicab driver by the neck and robbed him. Because the respondent’s crime involved the intent to threaten or use force against a person and conduct tending to effect such threat or use of force, we conclude that it is a particularly serious crime rendering the respondent ineligible for withholding of removal.
Pet’r’s App. 6-7 (citations omitted).
II.
The BIA generally assesses the seriousness of a crime by “examin[ing] a variety of factors[,] [having] found that ‘the consideration of the individual facts and circumstances is appropriate.’ ” In re N-A-M- 24 I. & N. Dec. 336, 342 (BIA 2007) (internal citation omitted). These factors have included: “[1] the nature of the conviction, [2] the circumstances and underlying facts of the conviction, [3] the type of sentence imposed, and, [4] most importantly, whether the type and circumstances of the crime indicate that the alien will be a danger to the community.” In re Frentescu, 18 I. & N. Dec. 244, 247 (BIA 1982). Since Frentescu, the BIA’s approach has “evolved” such that the BIA now places lesser weight on the type of sentence imposed and whether an alien is a danger to the community. In re N-A-M- 24 I. & N. Dec. at 342-43. Nevertheless, the BIA continues to apply a fact-based approach in evaluating the seriousness of the actual crime committed.
On some occasions, the BIA has substituted a categorical approach for the case-by-case Frentescu analysis to find that certain crimes are per se particularly serious based solely on the statutory elements of the offense. See In re Q-T-M-T-, 21 I. & N. Dec. 639, 650-51 (BIA 1996). But neither the majority nor the Government takes the position that the BIA applied the categorical approach in this matter. Had the BIA done so, it would have declined to examine the circumstances and events leading to Salazar’s guilty plea. Compare Ahmetovic v. INS, 62 F.3d 48, 52 (2d Cir.1995) (noting that the BIA explicitly declined such examination in finding first degree manslaughter to be per se particularly serious).
Instead, the BIA cited the four Frentescu factors as the governing legal standard, and relied on the presentence investigation report to determine that the victim in this case was grabbed by his neck. It was this fact that persuaded the BIA that Salazar’s crime was “particularly serious.” In so doing, the BIA made an independent finding of fact.[7]
*46 But the BIA is not free to make its own factual findings; rather:
The BIA is bound by the IJ’s factual determinations “including findings as to the credibility of testimony” and reviews these findings only to determine whether they are clearly erroneous.
Sioe Tjen Wong v. Att’y Gen., 539 F.3d 225, 230 (3d Cir.2008) (quoting 8 C.F.R. § 1003.1(d)(3)(i)). “ ‘The Board is an appellate body whose function is to review, not to create, a record.’ ” In re A-P-, 22 I. & N. Dec. 468, 476 (BIA 1999) (internal citation omitted).
Moreover, not only did the BIA create its own factual record, it utterly disregarded the factual record created by the IJ. Nowhere did the BIA mention — let alone find clearly erroneous — the IJ’s factual findings that no weapon was used and that the original sentence involved no term of imprisonment. For the BIA to properly reverse the IJ’s determination, it needed to find either that the offense was particularly serious despite these mitigating facts, or find that these factual findings were clearly erroneous. Cf. Wang v. BIA, 437 F.3d 270, 275 (2d Cir.2006) (“The BIA should demonstrate that it has considered such evidence, even if only to dismiss it.”).
The majority rests principally on the argument that “[t]he BIA was under no obligation to defer to the IJ’s factual findings to the extent those findings credited Salazar’s testimony alone in contravention of her crime.” In so doing, both the BIA and the majority have forsaken and ignored our precedent that the trial forum (here, the IJ) makes all factual findings and that the appellate forum (here, the BIA) does not. Sioe Tjen Wong, 539 F.3d at 230; In re A-P-, 22 I. & N. Dee. at 476. Specifically, I refer to the IJ’s findings that “[n]o weapon was involved and [that] her initial sentence was time served and five years’ probation.” Pet’r’s App. 9. Conversely, even granting that the IJ was not allowed to credit Salazar’s protestations of innocence, the IJ was not compelled to credit the taxi driver’s statement that he was grabbed by the neck. Cf. People v. Hassett, 144 A.D.2d 385, 533 N.Y.S.2d 958 (N.Y.App.Div.1988) (holding that even a push is sufficient force to sustain a conviction for attempted robbery in the third degree).
The majority compounds its error when it states that the BIA may limit its Frentescu analysis to the statutory elements, the record of conviction, and the presentence investigation report. Unless the BIA takes the categorical approach — in which case it may rely only on the statutory elements — it must consider the circumstances and underlying facts of the conviction. Afridi v. Gonzales, 442 F.3d 1212, 1221 (9th Cir.2006) (concluding “that the BIA acted arbitrarily and capriciously in failing in its duty to consider the facts and circumstances of Mr. Afridi’s conviction”), abrogated on other grounds by Estrada-Espinoza v. Mukasey, 546 F.3d 1147 (9th Cir.2008); Yousefi v. INS, 260 F.3d 318, 329-30 (4th Cir.2001) (vacating the BIA’s decision as arbitrary and capricious where it failed to consider “key Frentescu factors” including “the circumstances and underlying facts of the conviction”). To the extent that the IJ made findings regarding the circumstances and underlying facts that did not undermine the fact of Salazar’s conviction, the BIA erred in failing to consider them.
III.
The BIA improperly arrogated to itself the IJ’s function as factfinder and failed to *47 defer or give credit to the IJ’s findings. Accordingly, I would vacate the BIA’s decision, and remand for further consideration of whether Salazar’s conviction was for a particularly serious crime and, if necessary, whether Salazar established a clear probability of persecution.[8]
I respectfully dissent.

. The IJ stated:
After applying the applicable standards to determine whether respondent’s attempted robbery conviction constitutes a "particularly serious crime,” it is determined that the conviction falls short in this regard. Respondent testified that the cabbie refused to pay for sexual services for which he had propositioned and then called the police and lied to them about her trying to rob him. No weapon was involved and her initial sentence was time served and five years' probation.
Pet'r's App. 9 (citation omitted).

. Although the presentence investigation report was introduced into evidence before the immigration court, the IJ did not make any findings of fact with regard to it. Cf. Chalfant v. Wilmington Inst., 574 F.2d 739, 750 (3d Cir.1978) (en banc) (Garth, J., dissenting) ("[A] district court is not required to make findings on all the evidence presented if the findings that it does make are sufficient to support its ultimate conclusion____ Furthermore, the district court need not make findings which assert the reciprocal negative of each of its affirmative findings.''). The IJ may not reassess guilt or innocence, but neither is he required to accept verbatim the account of events as provided in the presentence investigation report. See Dickson v. Ashcroft, 346 F.3d 44, 54-55 (2d Cir.2003) (holding that the BIA erred in relying on the factual narrative in the presentence report because it "may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial had the prosecution attempted to present them”). *46 By contrast, the BIA appears to have adopted wholesale the presentence investigation report as the true account of events.

. Salazar must establish a "clear probability” of persecution to receive withholding of removal. Toussaint v. Att’y Gen., 455 F.3d 409, 413 (3d Cir.2006). The BIA summarily stated that the record did not show that the Colombian government directly persecutes its citizens based on gender or gender alteration. But the IJ engaged in a lengthy discussion explaining that "members of the LGBT community ... cannot rely on the [Colombian] government for protection from being targeted on account of the social group membership. Indeed, members of the government’s own military have participated in the violent targeting of the LGBT community...." Pet’r's App. 13. The BIA did not address this alternative claim. See Sukwanputra v. Gonzales, 434 F.3d 627, 637 (3d Cir.2006) (remanding for reconsideration where the IJ failed to adequately address petitioner’s claim of a pattern or practice of persecution).