# Matter of J-O-A-, Respondent

*Decided June 4, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The respondent's conviction for health care fraud under 18 U.S.C. § 1347 is for a particularly serious crime.

(2) Given the absence of any direct encounters with the criminals the respondent fears, insufficient evidence that his relatives or employees have been targets of kidnapping, and the respondent's ability to relocate within Nigeria, the Immigration Judge permissibly found that it is not more likely than not the respondent will be tortured.

FOR THE RESPONDENT: Pro se

BEFORE: Board Panel: HUNSUCKER, GEMOETS, and CHABAN, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

This matter is before us pursuant to a May 26, 2020, order from the United States Court of Appeals for the Third Circuit granting the parties' joint motion to remand this matter to the Board in light of intervening Circuit Court precedent. The respondent, who is a native and citizen of Nigeria, and the Department of Homeland Security ("DHS") did not file briefs following remand from the Third Circuit. For the following reasons, we will dismiss the respondent's appeal of the Immigration Judge's decision denying his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018), and for protection under the regulations implementing the Convention Against Torture ("CAT").[1]

## I. BACKGROUND

On March 28, 2017, the respondent was convicted by a federal court for the offense of health care fraud, in violation of 18 U.S.C. § 1347. The

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

respondent, who previously adjusted his status to lawful permanent resident, was charged with two grounds of removability, both of which were sustained. The ground relevant to the respondent's eligibility for relief is the charge under section 237(a)(2)(A)(iii) of the INA, 8 U.S.C. § 1101(a)(2)(A)(iii) (2018), for having been convicted of an aggravated felony as defined in section 101(a)(43)(M) of the INA, 8 U.S.C. § 1101(a)(43)(M) (2018), namely an offense involving fraud or deceit in which the loss to the victim exceeded $10,000.

The respondent applied for asylum and withholding of removal, asserting a fear of returning to Nigeria. On January 3, 2019, the Immigration Judge denied the respondent's applications for asylum and withholding of removal under the INA on the basis that the respondent's conviction for health care fraud constituted a particularly serious crime.[2] The Immigration Judge also denied the respondent's request for protection under the CAT.

On June 6, 2019, we dismissed the respondent's appeal of the Immigration Judge's decision and denied his request for remand. We affirmed the Immigration Judge's conclusion that the respondent is barred from asylum and withholding of removal under the INA on the basis that he had committed a particularly serious crime. We also affirmed the conclusion that the respondent had not met his burden for protection under the CAT. The respondent subsequently filed a petition for review with the Third Circuit.

Before the Third Circuit, the parties jointly requested remand for this Board to revisit the question of whether the respondent was subject to the particularly serious crime bar in light of the intervening Third Circuit decision in *Luziga v. Att'y Gen. U.S.*, 937 F.3d 244 (3d Cir. 2019). The parties also sought remand for the Board to consider whether the respondent established his eligibility for CAT protection under the framework established in *Myrie v. Att'y Gen. U.S.*, 855 F.3d 509 (3d Cir. 2017), and reaffirmed in *Quinteros v. Att'y Gen. U.S.*, 945 F.3d 772 (3d Cir. 2019).

## II.    ANALYSIS

### A.  Particularly Serious Crime Bar

We first consider whether the respondent's 2017 conviction for health care fraud in violation of 18 U.S.C. § 1347 falls within the ambit of a particularly

---

[2] The respondent's conviction is an aggravated felony, which is per se a particularly serious crime for purposes of asylum. INA § 208(b)(2)(B)(i), 8 U.S.C. § 1158(b)(2)(B)(i).

serious crime.  *See Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007) ("If the elements of the offense do not potentially bring the crime into a category of particularly serious crimes, the individual facts and circumstances of the offense are of no consequence, and the alien would not be barred from a grant of withholding of removal"); *see also* INA § 241(b)(3)(B)(ii), 8 U.S.C. § 1231(b)(3)(B)(ii).  We have repeatedly held that, "[a]lthough offenses against persons are more likely to be categorized as particularly serious crimes, crimes against property may also be found to be particularly serious." *Matter of F-R-A-*, 28 I&N Dec. 460, 468 (BIA 2022) (citing *Matter of Frentescu*, 18 I&N Dec. 244, 247 (BIA 1982)).  Aggravated felonies are among the types of crimes more likely to be found particularly serious.  *Id.* (citing *Bare v. Barr*, 975 F.3d 952, 962 (9th Cir. 2020)).

In *Luziga*, the Third Circuit approved of our two-step framework in *Matter of N-A-M-*, 24 I&N Dec. at 336, but concluded that we failed to correctly apply that framework in that particular case, as we did not articulate whether the elements of the offense fell within the ambit of a particularly serious crime before proceeding to the second step of the inquiry.  937 F.3d at 253–54; *see also Denis v. Att'y Gen. U.S.*, 633 F.3d 201, 214–16 (3d Cir. 2011) (deferring to the two-step framework set forth in *Matter of N-A-M-*). The Third Circuit in *Luziga* ultimately remanded for us to properly analyze the offense under our two-step framework, emphasizing that the first step of this inquiry requires analysis of the elements of the offense.  *Luziga*, 937 F.3d at 254;  *see also Denis*, 633 F.3d at 215–16 (observing that the *Matter of N-A-M-* framework is not governed by a categorical analysis).

Here, the relevant statute of conviction provides that an individual has committed health care fraud if he or she:

> (a) . . . knowingly and willfully executes, or attempts to execute, a scheme or artifice –
>> (1) to defraud any health care benefit program; or
>> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program,
>
> in connection with the delivery of or payment for health care benefits, items, or services . . . .

18 U.S.C. § 1347.  Both subsections of the statute inherently involve deceitful or fraudulent conduct.  *See Kawashima v. Holder*, 565 U.S. 478, 484 (2012) (holding that "fraud or deceit" need not be set forth as formal elements in a statute where the scope of the statutory clause "refers more broadly to offenses that [involve] fraud or deceit—meaning offenses with elements that necessarily entail fraudulent or deceitful conduct").  Thus,

regardless of whether the respondent was convicted under section 1347(a)(1) or (2), the statutory elements bring the offense within the ambit of a particularly serious crime. *See Matter of F-R-A-*, 28 I&N Dec. at 468 (explaining that fraud offenses fall within the ambit of a particularly serious crime); *Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012) (affirming our conclusion that mail fraud is a particularly serious crime).

Our determination is further underscored by the fact that the victim under this statute must be a health care benefit program, which is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b). As the victim must be one that provides health care benefits, items, or services, it logically follows that any fraud inflicted on such a plan or contract may well negatively impact or affect that entity's ability to continue providing health care benefits, items, or services.

Individuals convicted under this statute include those who have defrauded Medicare—a public program paid into by taxpayers to assist them in their vulnerable later years. *See, e.g., United States v. Shvets*, 154 F.4th 74, 78 (3d Cir. 2025) (examining case where defendant and other employees submitted false bills for high-priced care to Medicare); *United States v. Beaufils*, 160 F.4th 1147, 1153 (11th Cir. 2025) (affirming convictions in Medicare fraud scheme). Others convicted under the statute include those who stole the personal information of patients to defraud insurance companies with false claims. *See, e.g., United States v. James*, 151 F.4th 28, 35–37 (2d Cir. 2025) (detailing scheme involving hundreds of millions of dollars of fraudulent health care claims). These examples, among many others, demonstrate that the elements of 18 U.S.C. § 1347 proscribe conduct that inflicts serious harm.

Fraud, in all its forms, is a blight on our society. Victims of fraud—from the U.S. Government to insurance companies to everyday individuals—face significant financial and emotional harm. *See, e.g., United States v. Kaye*, 23 F.3d 50, 52 (2d Cir. 1994) (describing victim who was in her eighties and "was more significantly harmed than other fraud victims, even other vulnerable fraud victims, because she had lost most of her liquid assets, and was forced to depend on the generosity of others to meet her usual living expenses, quite possibly for the rest of her life"); *United States v. Roberts*, 552 F. App'x 136, 139 (3d Cir. 2014) (noting the defendants' participation in a "massive fraud that significantly harmed the lives of numerous innocent people").

We reaffirm our precedent that a crime need not be an offense against persons to constitute a particularly serious crime. *See Matter of F-R-A-*, 28 I&N Dec. at 468; *Matter of Frentescu*, 18 I&N Dec. at 247. We hold that fraud offenses generally involve elements that are likely to fall within the ambit of a particularly serious crime, and a conviction for a fraud offense will trigger a circumstance-specific analysis to determine if the specific criminal act was "particularly serious."

We also affirm the Immigration Judge's findings and conclusions with respect to the second step of the particularly serious crime analysis. *See Luziga*, 937 F.3d at 253 (citing *Matter of N-A-M-*, 24 I&N Dec. at 342, for the proposition that once the elements bring a crime within the ambit of a particularly serious crime, all reliable information may be considered, including conviction records and information outside the confines of the record of conviction). Considering the nature of the respondent's conviction, the sentence imposed, and the circumstances and underlying facts of the conviction, the Immigration Judge correctly concluded that the respondent's conviction for health care fraud is for a particularly serious crime. *See Matter of N-A-M-*, 24 I&N Dec. at 342–44; *see also Matter of F-R-A-*, 28 I&N Dec. at 467–69.

The respondent's offense caused significant loss to the Government and the public, both in terms of the $2.65 million monetary loss and the other intangible harms inflicted. The respondent received 11 months of imprisonment, 3 years of probation, and was ordered to pay $1.5 million in restitution, all of which supports the Immigration Judge's finding that the respondent was more than a "minor player" in the scheme. While the respondent ultimately cooperated with the Government, this does not impact the finding that he was convicted of a particularly serious crime. *See generally Kaplun v. Att'y Gen. U.S.*, 602 F.3d 260, 268 (3d Cir. 2010) (affirming Board's decision that a conviction for securities fraud with a loss of nearly $900,000 constituted a particularly serious crime). Thus, we conclude that the respondent has been convicted of a particularly serious crime consistent with *Luziga* and *Matter of N-A-M-*. The respondent is therefore ineligible for withholding of removal under both the INA and the CAT.

## B. Protection under the CAT

We affirm the denial of the respondent's application for deferral of removal under the CAT. *See* 8 C.F.R. §§ 1208.16(c)-1208.18. We note that, following remand from the Third Circuit, neither party requested remand to the Immigration Judge to present any updated facts or make any additional

argument regarding the respondent's application for CAT protection. While an application for protection under the CAT is forward-looking, in the absence of any such argument, we presume the relevant facts have not changed since the Immigration Judge issued his decision.[3]

The respondent claimed he last visited Nigeria in 2009, but stated that he still owns a nursing school, radio program, and other businesses there. Between 2015 and 2018, unidentified groups of men approached his nephew four times, making threats and inquiring about the respondent's whereabouts. The unidentified men claimed they were from the U.S. Embassy, threatened the respondent's nephew with a gun, searched his house, demanded to see the respondent, referenced the respondent stealing money or escaping to the United States, and/or made threats. There were several other incidents in 2018 in which unknown persons made threats or asked questions about the nursing school CEO but did not mention the respondent by name. The respondent claims he will be kidnapped in Nigeria and that Nigerian authorities will directly or indirectly cooperate with the offenders.

In analyzing a request for protection under the CAT, an Immigration Judge is required to consider all record evidence and make factual findings regarding (1) what is likely to happen to the respondent if removed and (2) how the government will likely act in response to the respondent's feared harm. *Myrie*, 855 F.3d at 516–17; *accord Quinteros*, 945 F.3d at 787–88 (emphasizing that adjudicators must apply the *Myrie* framework in evaluating CAT claims). Thereafter, the Immigration Judge must engage in a legal analysis to determine (1) whether what is likely to happen to the respondent rises to the level of torture, and (2) whether the government's likely actions would qualify as torture or acquiescence to torture. *Myrie*, 855 F.3d at 516–17; *accord Quinteros*, 945 F.3d at 787–788.

Consistent with the first factual prong of the *Myrie* framework, the Immigration Judge found the respondent is not more likely than not to be kidnapped or physically harmed if removed to Nigeria. Given the absence of any direct encounters with the criminals the respondent fears, insufficient evidence that his relatives or employees have been targets of kidnapping, and

---

[3] We acknowledge that the respondent filed additional evidence with this Board in 2019, when he requested reconsideration of our original decision dismissing his appeal. That evidence did not materially differ from what had been presented previously, so remand was not warranted. While the respondent claimed at that time that his cousin had been recently killed, he did not provide sufficient evidence or argument to establish why or by whom his cousin was killed. Following remand from the Third Circuit, the respondent has not renewed any argument about the relevance of his cousin's death to his application for CAT protection.

the respondent's ability to relocate within Nigeria, the Immigration Judge permissibly found that it is not more likely than not the respondent will be tortured. The respondent's references to general instances of crime and other assertions are insufficient to establish a likelihood of himself being singled out for torture. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous"). The predictive findings of the Immigration Judge are based on record evidence and therefore are not clearly erroneous. *See Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 687 (2021) (explaining that if the trier of fact's "view of the evidence is plausible in light of the entire record, an appellate court may not reverse even if it is convinced that it would have weighed the evidence differently in the first instance"); *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (holding that, on clear error review, "[a] finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern" (quoting *Anderson v. City of Bessemer City*, 470 U.S. at 574)).

Similarly, there is no clear error in the Immigration Judge's findings regarding the second factual prong of the *Myrie* framework—how the Nigerian Government will likely act in response to the respondent's feared harm. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2026). While the respondent claimed that the Nigerian police did nothing when his nephew experienced a home invasion, the Immigration Judge found, per the respondent's own evidence, that a notorious kidnapper had been arrested and convicted. The Immigration Judge relied on record evidence, including the respondent's own evidence showing the Nigerian Government investigates, prosecutes, and harshly punishes kidnapping offenses, as well as evidence that officials utilize methods to deter kidnappings from occurring. The Immigration Judge made plausible factual inferences that are not clearly erroneous. *See Matter of M-A-M-Z-*, 28 I&N Dec. 173, 177 (BIA 2020) ("Clear error exists only where the Immigration Judge's findings 'are illogical or implausible,' or 'without support in inferences that may be drawn from the facts in the record." (quoting *Matter of A-B-*, 27 I&N Dec. 316, 341 (A.G. 2018))).

Moreover, consistent with the Third Circuit's analysis in *Quinteros*, 945 F.3d at 788, the Immigration Judge did not focus solely on the efforts of Nigerian authorities but rather analyzed the results of those efforts, namely the results of prosecutions against kidnappers and evidence of active investigations into corrupt Nigerian officials. The evidence supports the Immigration Judge's finding that Nigeria investigates and prosecutes kidnapping. These findings support the conclusion that, even if the respondent were to be tortured, Nigerian officials' actions would not constitute acquiescence to torture. *See* 8 C.F.R. § 1208.18(a)(7); *see also*

*Quinteros*, 945 F.3d at 788; *Myrie*, 855 F.3d at 516–17. "[A] government that investigates reports of private violence is not willfully blind to that violence." *Galeas Figueroa v. Att'y Gen. U.S.*, 998 F.3d 77, 93 (3d Cir. 2021). The Nigerian government's alleged ineffectiveness in solving a prior home invasion does not demonstrate that "investigations of future reports of crime would be so unsuccessful as to constitute acquiescence." *Id.* As found by the Immigration Judge, the objective country conditions evidence and the specific example of the respondent's nephew's home invasion do not demonstrate a likelihood of acquiescence to torture. Rather, the evidence shows that the authorities in the respondent's country would likely respond to a report of crime by commencing an investigation and would not turn a blind eye to the respondent's torture.

Based on the foregoing, we affirm the denial of the respondent's application for protection under the CAT. Accordingly, the following order will be entered.

**ORDER:**  The appeal is dismissed.

**NOTICE:**  If a respondent is subject to a final order of removal and willfully fails or refuses to depart from the United States pursuant to the order, to make timely application in good faith for travel or other documents necessary to depart the United States, or to present himself or herself at the time and place required for removal by DHS, or conspires to or takes any action designed to prevent or hamper the respondent's departure pursuant to the order of removal, the respondent shall be subject to a civil monetary penalty of up to $998 for each day the respondent is in violation. *See* section 274D of the INA, 8 U.S.C. § 1324d (2024); 8 C.F.R. § 280.53(b)(14) (2026). Further, any respondent that has been denied admission to, removed from, or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter enters, attempts to enter, or is at any time found in the United States shall be fined or imprisoned not more than 2 years, or both. *See* INA § 276(a), 8 U.S.C. § 1326(a) (2024).