# Matter of C-A-S-D-, Respondent

*Decided November 1, 2019*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  To qualify for a waiver of inadmissibility under section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (2012), an alien who is found to be a violent or dangerous individual must establish extraordinary circumstances, which may be demonstrated by a showing of exceptional and extremely unusual hardship to the alien or to his qualifying relatives. *Matter of Jean*, 23 I&N Dec. 373 (A.G. 2002), followed.

(2)  Even if an alien establishes exceptional and extremely unusual hardship, the favorable and adverse factors presented must be balanced to determine if a waiver should be granted in the exercise of discretion.

FOR RESPONDENT:  Rachel A. Naggar, Esquire, Silver Spring, Maryland

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Yoonji Kim, Assistant Chief Counsel

BEFORE:  Board Panel:  GREER and O'CONNOR, Board Members; BAIRD, Temporary Board Member.

BAIRD, Temporary Board Member:

In a decision dated January 9, 2019, an Immigration Judge granted the respondent's applications for a waiver of inadmissibility under section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (2012), and adjustment of status under section 209(a).  The Immigration Judge denied the respondent's request for deferral of removal pursuant to the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The Department of Homeland Security ("DHS") has appealed from the Immigration Judge's grant of the waiver and adjustment of status.  The respondent has contested the denial of his request for deferral of removal.  The DHS's appeal will be sustained, and the respondent will be ordered removed from the United States.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Cuba who was admitted to the United States as a refugee on March 20, 1989.  He did not adjust his status to that of a lawful permanent resident within 1 year of entry.  On October 21, 2011, the respondent was convicted of three crimes—conspiracy to commit robbery under sections 2C:5-2 and 2C:15-1 of the New Jersey Statutes Annotated, false imprisonment under section 2C:13-3, and attempt to cause bodily injury under section 2C:12-1A(1).  He was sentenced to a term of imprisonment of 9 years and 6 months.

On December 13, 2011, the DHS issued a notice to appear, charging the respondent with removability under section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (2012), as an alien convicted of a crime involving moral turpitude.  The DHS later withdrew that charge and charged the respondent under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2012), as an alien who was convicted of an aggravated felony.  Specifically, he was charged under section 101(a)(43)(U) of the Act, 8 U.S.C. § 1101(a)(43)(U) (2012), with conspiracy to commit an aggravated felony, namely, a theft offense for which the term of imprisonment is a least 1 year under section 101(a)(43)(G).

In proceedings before the Immigration Judge, the respondent conceded that he is removable under section 237(a)(2)(A)(iii) of the Act because conspiracy to commit robbery is an aggravated felony.[1]  He further conceded that he is inadmissible to the United States under section 212(a)(2)(A)(i)(I) of the Act because his offense is also a crime involving moral turpitude.  The respondent therefore applied for a waiver of inadmissibility under section 209(c) of the Act to establish his eligibility for adjustment of status.

## II.  ISSUE

The issue presented in this case is whether, in the adjudication of a section 209(c) waiver request by an alien who is found to be violent or dangerous, and who must therefore show exceptional and extremely unusual hardship, the alien's hardship may be considered, in addition to the hardship that qualifying relatives may suffer as a result of the alien's removal.

---

[1]  The respondent also conceded that his aggravated felony conviction renders him ineligible for asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a) (2012).  *See* sections 208(b)(2)(A)(ii), (B)(i) of the Act.  In addition, he conceded that his conviction bars him from seeking withholding of removal under section 241(b)(3)(A) of the Act, 8 U.S.C. § 1231(b)(3)(A) (2012), and under the Convention Against Torture.  *See* section 241(b)(3)(B)(ii) of the Act; 8 C.F.R. § 1208.16(d)(2) (2019).

## III.  ANALYSIS

According to the adjustment of status procedures in section 209(a)(1) of the Act, an alien who has been admitted to the United States as a refugee under section 207 of the Act, 8 U.S.C. § 1157 (2012), whose admission has not been terminated, who has been physically present in the United States for at least 1 year, and who has not acquired permanent resident status is eligible to adjust status to that of a lawful permanent resident if he is admissible to the United States.  If found to be admissible, the alien will be considered to be a lawful permanent resident as of the date of his arrival into the United States.  Section 209(a)(2) of the Act.  If the alien is not admissible, he may request a waiver of inadmissibility under section 209(c).

### A.  Section 209(c) Waiver

Section 209(c) of the Act provides that the Attorney General may waive certain criminal grounds of inadmissibility under section 212(a) of the Act "with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest."  In *Matter of Jean*, 23 I&N Dec. 373, 383 (A.G. 2002), the Attorney General articulated a heightened standard under which "violent or dangerous individuals" will not be granted a section 209(c) waiver of inadmissibility for adjustment of status in the exercise of discretion "except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship."  The Attorney General added that "depending on the gravity of the alien's underlying criminal offense, such a showing might still be insufficient."  *Id.*

The Immigration Judge found that the respondent is a violent and dangerous person who was therefore required to meet a heightened standard for a waiver of inadmissibility under section 209(c) of the Act by showing "exceptional and extremely unusual hardship" pursuant to *Matter of Jean*.  *Id.*  He further determined that both the respondent and his United States citizen son would suffer such hardship if the respondent is removed to Cuba.  Concluding that the respondent demonstrated extraordinary circumstances and warranted a favorable exercise of discretion, despite his conviction for a serious crime, the Immigration Judge granted the respondent's applications for a section 209(c) waiver of inadmissibility and adjustment of status.

### 1. "Violent or Dangerous Individuals"

The Immigration Judge found that the respondent was convicted of a violent and dangerous crime because his robbery offense involved threatening his victim with bodily injury. The Immigration Judge also noted that the respondent's record of conviction indicates that he falsely imprisoned the victim and caused him to suffer serious bodily injury. The respondent argues that he is not a violent or dangerous person and that the Immigration Judge erred in applying the heightened standard outlined in *Matter of Jean*. We disagree.

The record shows that the respondent was convicted of the lesser included offense of conspiracy to commit second degree robbery. Section 2C:15-1(a) of the New Jersey Statutes Annotated provides that a person is guilty of robbery in the second degree if, in the course of committing a theft, he "[i]nflicts bodily injury or uses force upon another" or "[t]hreatens another with or purposely puts him in fear of immediate bodily injury." The State's evidence showed the respondent "conspired to get money by inflicting bodily injury or using force on [the victim]." The record indicates that the respondent committed a home invasion robbery, bound the victim with duct tape, pushed him down the stairs, and caused him to suffer severe injuries, including broken bones.

We discern no error in the Immigration Judge's determination that the respondent was convicted of a violent and dangerous crime. The Immigration Judge properly considered the gravity of the respondent's convictions for conspiracy to commit robbery, false imprisonment, and assault and concluded, pursuant to the relevant legal standard, that the respondent is a "violent or dangerous individual" who must demonstrate extraordinary circumstances to merit a grant of adjustment of status. *Matter of Jean*, 23 I&N Dec. at 383.

### 2. "Exceptional and Extremely Unusual Hardship"

The Immigration Judge considered the hardship that the respondent and his United States citizen son would suffer upon his removal, concluding that the hardship to each of them would rise to the level of exceptional and extremely unusual. The DHS argues that the Immigration Judge erred in finding that the respondent met his burden of establishing extraordinary circumstances by showing that denial of the waiver would result in the heightened level of hardship required by *Matter of Jean*.

In this regard, the DHS asserts that the Immigration Judge erred in assessing the respondent's hardship, arguing that only the hardship to qualifying relatives may be considered. We must therefore make a threshold

determination whether, in the adjudication of a section 209(c) waiver request by an alien who is found to be violent or dangerous, and who must therefore show exceptional and extremely unusual hardship, the alien's hardship may be considered, in addition to the hardship that qualifying relatives may suffer as a result of the alien's removal.  For the following reasons, we conclude that *Matter of Jean* imposes no limitation in this respect and that an alien may satisfy the heightened requirement by establishing exceptional and extremely unusual hardship to himself or to his qualifying relatives.

In support of its argument that only hardship to qualifying relatives may be considered, the DHS points to the waiver of criminal grounds of inadmissibility in section 212(h) and to cancellation of removal under section 240A(b)(1) of the Act, 8 U.S.C. § 1229b(b)(1) (2012).  Both of these forms of relief have statutory eligibility requirements, which include a showing of hardship that is limited to specified members of the alien's family.  *See* sections 212(h)(1)(B), 240A(b)(1)(D) of the Act.  The DHS contends that the hardship standard set forth in *Matter of Jean* similarly contemplates consideration of only the hardship to the alien's qualifying relatives.

We are unpersuaded by the DHS's argument.  The provisions it relies on do not govern this case, whose resolution turns on section 209(c) of the Act and the standard outlined in *Matter of Jean* for the exercise of discretion in the case of a violent or dangerous individual who is seeking a waiver.  There is no restriction precluding consideration of the hardship to the alien in *Matter of Jean*, which held only that the alien must clearly demonstrate that "the denial of status adjustment would result in exceptional and extremely unusual hardship."  *Matter of Jean*, 23 I&N Dec. at 383.

Section 209(c) of the Act differs from sections 212(h) and 240A(b)(1) in that it contains no statutory hardship requirement.  The question of hardship in regard to section 209(c) arises because of the Attorney General's mandate in *Matter of Jean* that a waiver may only be granted in the exercise of discretion to a violent or dangerous person where there are extraordinary circumstances, one of which is a showing of exceptional and extremely unusual hardship.  There is consequently no equivalence between this hardship, which *Matter of Jean* requires for a favorable exercise of discretion under section 209(c), and the hardship required by the statute to establish eligibility for relief under sections 212(h) and 240A(b)(1).

This distinction is reinforced by 8 C.F.R. § 1212.7(d) (2019), cited by the Immigration Judge, which relates to a discretionary waiver under section 212(h)(2) of the Act and has no applicability to the respondent's requested form of relief.  The regulation was issued after the publication of *Matter of Jean* and was intended to codify the principles articulated there in the context of exercising discretion to grant a section 212(h)(2) waiver to "criminal aliens applying or reapplying for a visa, seeking admission to the United

States, or seeking adjustment of status." Waiver of Criminal Grounds of Inadmissibility for Immigrants, 67 Fed. Reg. 78,675, 78,677 (Dec. 26, 2002) (Supplementary Information).

The commentary to the regulation clarifies that the standard, which was adopted from *Matter of Jean*, "governs only the exercise of discretion under section 212(h)(2) of the Act, *after* the alien has met the threshold requirements of section 212(h)(1)(B) of the Act." *Id.* The regulation does not pertain to section 212(h)(1)'s statutorily mandated showing of hardship to the alien's relatives but, instead, "speaks only to the exercise of discretion under [section] 212(h)(2)." *Mejia v. Gonzales*, 499 F.3d 991, 996 (9th Cir. 2007). Thus, the waivers under sections 209(c) and 212(h)(2) of the Act are independent of each other, and the regulation was intended to "harmonize the exercise of discretion to grant criminal waivers among applicants for adjustment of status by extending the *Matter of Jean* standards to those applications for the waiver of criminal grounds of inadmissibility made under section 212(h)(2) of the Act, including, but not limited to, adjustment of status." *Id.*

The United States Court of Appeals for the Ninth Circuit has explained that "the hardship standard of [8 C.F.R.] § 1212.7(d) operates separately from the hardship standard of [section 212(h)(1)(B)]" and that the regulation "directs the agency to consider hardship to the alien as well as to his or her relatives." *Rivera-Peraza v. Holder*, 684 F.3d 906, 910 (9th Cir. 2012); *see also Tejada v. Att'y Gen. of U.S.*, 513 F. App'x 190, 194 (3d Cir. 2013) (stating that the exceptional and extremely unusual hardship analysis may be applied to the respondent himself). Similarly, we conclude that an alien may satisfy the discretionary standard under *Matter of Jean* by showing exceptional and extremely unusual hardship to himself, as well as to his qualifying relatives. We therefore conclude that the Immigration Judge properly considered the hardship to both the respondent and his son.

However, we agree with the DHS that the respondent has not established that the denial of his application for adjustment of status would result in exceptional and extremely unusual hardship, as required by *Matter of Jean*. The Immigration Judge determined that the respondent's United States citizen son will suffer hardship because he has serious medical and behavioral health issues, including a diagnosis of Wolff-Parkinson-White syndrome and Adjustment Disorder. He will likely require future surgery for his heart condition. Based on the respondent's testimony and that of his girlfriend, who is his son's mother, the Immigration Judge stated that his girlfriend needs the respondent's financial support and assistance with caring for their son, since his childcare prevents her from working full-time. Finding them both to be credible, the Immigration Judge concluded that the

respondent's son relies on him for financial and emotional support. These factual findings are clearly erroneous. *See* 8 C.F.R. § 1003.1(d)(3)(i) (2019).

Evidence in the record shows that the respondent has not held a job since he was 19, before his son was born. He was arrested in June 2010 when his son was only 2 months old and has been incarcerated ever since. During that time, he sent his girlfriend a total of $20. In addition, although the respondent's girlfriend has been working part-time in a chiropractor's office, she also receives public assistance. The respondent claimed he has established a strong connection with his son, but that assertion is belied by evidence in the record showing that their relationship has consisted of phone calls and hour-long visits to the prison. Even if we give the testimony of the respondent and his girlfriend full value, we are not persuaded that the medical, financial, and emotional hardships that the respondent's son will suffer are, in the aggregate, exceptional and extremely unusual.

The Immigration Judge also cited evidence of the hardship the respondent himself will suffer if he is removed to Cuba. Specifically, the Immigration Judge observed that the respondent has lived in the United States for nearly 30 years and has no family, business, or property ties in Cuba. In addition, he noted the current country conditions information presented by the respondent, which indicates that significant human rights violations are occurring in Cuba. Finally, the Immigration Judge recognized the respondent's testimony that his father was beaten and jailed as a deserter from the Cuban military before he obtained refugee status for the family in the United States.

Regarding the respondent's hardship, we acknowledge that he came to the United States as a refugee, but that factor carries less weight here than in other contexts, because every respondent seeking a section 209(c) waiver entered as a refugee. Considering the respondent's refugee status in conjunction with the financial, economic, and emotional difficulties he claims he will suffer if he returns to Cuba, we are not convinced that they rise to the requisite level of hardship. *See Matter of Monreal*, 23 I&N Dec. 56, 59 (BIA 2001) (stating that to qualify as exceptional and extremely unusual, hardship must be "*substantially beyond that which ordinarily would be expected to result from the alien's deportation*").

Since the respondent has not shown that either he or his son would suffer exceptional and extremely unusual hardship if he is removed, we conclude that he has not established the extraordinary circumstances required for a favorable exercise of discretion under *Matter of Jean*. Although the absence of extraordinary circumstances is determinative of the respondent's eligibility for a waiver, we will also address the question of discretion.

### 3. Discretion

Even if an alien establishes the exceptional and extremely unusual hardship required to demonstrate extraordinary circumstances by *Matter of Jean*, a section 209(c) waiver and adjustment of status may still be denied in the exercise of discretion if the adverse factors, particularly those involving the alien's criminal conduct, outweigh the favorable ones. *Matter of Jean*, 23 I&N Dec. at 383 (emphasizing that a showing of the requisite hardship may not be enough to warrant a grant of relief if the alien's crime is a very serious one). If the respondent had demonstrated exceptional and extremely unusual hardship, that finding would be a significant favorable factor in a discretionary analysis.

In balancing the adverse factors with the equities and significant social and humane considerations in this case, the Immigration Judge found that, despite the respondent's conviction for a serious crime, a favorable exercise of discretion was warranted. The DHS challenges this finding on appeal, arguing that the Immigration Judge minimized the gravity of the respondent's criminal behavior and drug addiction and erred in finding that the respondent established remorse and rehabilitation.

We conclude that the respondent's extensive criminal history is a substantial adverse factor that outweighs the equities in his case and that he would not warrant a favorable exercise of discretion. He has multiple arrests and felony convictions, with an escalation of violent criminal activity over time. The respondent was arrested in 2009 for forgery, possession of a controlled substance, and use of drug paraphernalia, for which he was required to complete a pretrial intervention program. He was convicted of residential burglary the following year.

In 2011, he was convicted in a jury trial of three serious offenses—conspiracy to commit robbery, false imprisonment, and simple assault, which under New Jersey law involves the attempt to cause bodily injury to another. The evidence before the Superior Court of New Jersey showed that the respondent committed a home invasion robbery, bound the victim with duct tape, stole money, pushed him down the steps, and caused severe injuries consistent with an assault, including broken bones in his eye socket, ribs, and upper arm. A Presentence Investigation Report in the record stated that the respondent grabbed the victim, threw him down a flight of stairs, pummeled him with his fists, wrapped nearly his entire head with duct tape, and threatened to kill him if he did not stay quiet.

The State's evidence also showed that after the false alibi the respondent initially gave to the police was disproven, he told police that he drove two other men to the victim's house but remained in the car and had nothing to do with the assault. The trial judge found aggravating circumstances,

including the extent of the respondent's prior criminal record, the seriousness of his crimes, the risk that he would commit another offense, and the need to deter him, and he sentenced the respondent to more than 9 years in prison.

The Immigration Judge found that the respondent has demonstrated substantial steps towards rehabilitation in prison, including pursuing a GED and a college education, enrolling in substance abuse classes, participating in individual and family-based therapy and counseling, and taking parenting classes. However, we are not persuaded by the respondent's testimony about his efforts to rehabilitate while in prison. He has been incarcerated since 2011, so his rehabilitation is difficult to assess. We therefore do not afford significant weight to his claim that he has been rehabilitated and would remain sober upon his release from prison. *See Matter of Mendez*, 21 I&N Dec. 296, 304 (BIA 1996) (finding that "good conduct in following prison rules in a controlled setting [is not] persuasive evidence of rehabilitation").

Further, the Immigration Judge determined that the respondent expressed genuine remorse for his criminal conduct. However, despite the respondent's jury conviction, which was affirmed on appeal, he maintains that he is completely innocent of the crimes and that he had no part in the beating of the victim. Although we may not "go beyond the judicial record to determine the guilt or innocence of an alien," we note the lengthy prison term the State court imposed, which reflects its judgment that the respondent engaged in grievous criminal conduct. *Id.* at 304.

We acknowledge the countervailing equities noted by the Immigration Judge, including the fact that as a child, the respondent was abused by his mother, a drug addict who beat and neglected him. The respondent testified that after coming to this country, he had no further contact with his father. He dropped out of school, started using drugs at a young age, and became homeless at the age of 15. The hardship that the respondent and his son will suffer upon his removal, although not sufficient to meet the "exceptional and extremely unusual" standard, are also factors in his favor, as are his length of residence and family ties in the United States. *See Matter of Mendez*, 21 I&N Dec. at 301.

The Attorney General has stated in unequivocal terms that discretion should not be exercised favorably with respect to aliens who have been convicted of dangerous or violent crimes, except in the most exceptional circumstances. *Matter of Jean*, 23 I&N Dec. at 383–84 ("[A]liens arriving at our shores must understand that residency in the United States is a *privilege*, not a *right*. For those aliens, like the respondent, who engage in violent criminal acts during their stay here, this country will not offer its embrace."); *see also Matter of K-A-*, 23 I&N Dec. 661, 666 (BIA 2004) ("Indeed, even nonviolent aggravated felonies will generally constitute significant negative factors militating strongly against a favorable exercise

of discretion.").  The respondent's convictions for violent and dangerous crimes, which represent an escalation of his criminal activity over the years, present significant adverse discretionary factors.  Therefore, even if he had established extraordinary circumstances by the necessary showing of hardship, we would not grant a waiver and adjustment of status in the exercise of our discretion because the respondent has not demonstrated any truly compelling countervailing equities that would outweigh the serious negative factors in his case.

### B.  Deferral of Removal Under the Convention Against Torture

The respondent argues that the Immigration Judge erred in denying his request for deferral of removal under the Convention Against Torture.  He claims that under its procedures for repatriation, the Cuban Government will investigate his citizenship upon his return to Cuba, reviewing his birth certificate, which contains his parents' names, and possibly interviewing him.  He further asserts that if the Government learns of his relationship to his father, he will more likely than not be tortured because of his father's military service and imprisonment and because of his own anti-communist and anti-government political opinions.  He cites to the State Department Report, which indicates that the Cuban Government arbitrarily arrests individuals, intimidates and assaults human rights and pro-democracy advocates, and maintains harsh prison conditions.

The Immigration Judge found the respondent's claim that he will be tortured because of his father's defection from Cuba to be speculative.  According to the Immigration Judge, the respondent has presented a string of suppositions but did not show that it is more likely than not that each step in the chain of events is more likely than not to occur.  *See Matter of J-F-F-*, 23 I&N Dec. 912, 917–18 (A.G. 2006).  In particular, the Immigration Judge found that the evidence does not establish that it is more likely than not that the Cuban Government would remember his father's actions from 30 years ago, learn of the respondent's relationship with his father, seek him out as a result of their relationship or his current political views, and attempt to torture him.  The Immigration Judge also found that the respondent has not established that it is more likely than not that he would be imprisoned upon his return and subjected to harsh prison conditions amounting to torture or that the Government would torture him because of his name or the pro-democracy ideals he learned in the United States.

We, too, are unpersuaded by the respondent's assertion that the Cuban Government will more likely than not take an interest in him and subject him to harm amounting to torture because his family and other relatives fled to the United States as refugees and his father claims that he cannot return

because of his past actions. We therefore discern no clear error in the Immigration Judge's factual findings regarding the likelihood of what the respondent claims will happen to him upon his return to Cuba. *See Myrie v. Att'y Gen. U.S.*, 855 F.3d 509, 516 (3d Cir. 2017) (stating that in evaluating a claim under the Convention Against Torture, an Immigration Judge's findings regarding what is likely to happen to an alien if removed are factual findings reviewed for clear error).

Nor did the Immigration Judge clearly err in finding that the respondent has not shown he would be imprisoned under conditions amounting to torture or that the general evidence of human rights problems in Cuba indicates that he would be personally at risk of torture. The respondent has not met his burden of proof to establish that he will more likely than not be tortured in Cuba by submitting evidence of that country's human rights violations, such as arbitrary arrests of political opponents, physical abuse of detainees and prisoners, and harsh prison conditions. *See Wang v. Ashcroft*, 368 F.3d 347, 350–51 (3d Cir. 2004) (finding that an alien cannot show that it is more likely than not that he will be tortured by citing State Department reports indicating that certain categories of prisoners are likely to be tortured). We will therefore affirm the Immigration Judge's denial of the respondent's request for deferral of removal under the Convention Against Torture.

## IV. CONCLUSION

An applicant for a discretionary waiver of inadmissibility under section 209(c) of the Act who has been determined to be a violent or dangerous individual will not be afforded a favorable exercise of discretion and a grant of adjustment of status "except in extraordinary circumstances, such as . . . [where the] alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship." *Matter of Jean*, 23 I&N Dec. at 383. This heightened standard for the exercise of discretion may be met by a showing that either the alien or his qualifying relatives will suffer the requisite level of hardship.

The respondent has not established any extraordinary circumstances by demonstrating that the denial of his adjustment of status would result in exceptional and extremely unusual hardship to him or his United States citizen son. We therefore conclude that the respondent does not merit a favorable exercise of discretion under the standard set forth in *Matter of Jean*. In any case, the equities in his case are insufficient to outweigh his history of very serious and violent criminal conduct. Consequently, we will deny the respondent's applications for a section 209(c) waiver of inadmissibility and adjustment of status. We further affirm the Immigration Judge's denial of

his request for deferral of removal under the Convention Against Torture. Accordingly, the DHS's appeal will be sustained.

**ORDER:** The appeal of the Department of Homeland Security is sustained, and the Immigration Judge's grant of a waiver of inadmissibility and adjustment of status under section 209(c) of the Act is vacated.

**FURTHER ORDER:** The respondent is ordered removed from the United States to Cuba.