# Matter of F-R-A-, Respondent

*Decided February 3, 2022*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The amount of forfeiture ordered in a criminal proceeding may be considered in determining whether a crime of fraud or deceit resulted in a loss to a victim or victims exceeding $10,000 pursuant to section 101(a)(43)(M)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(M)(i) (2018), if the amount set forth in the order is sufficiently tethered and traceable to the conduct of conviction.

FOR RESPONDENT: Enedina G. Kassamanian, Esquire, Henderson, Nevada

FOR THE DEPARTMENT OF HOMELAND SECURITY: Rachel Silber, Associate Legal Advisor

BEFORE: Board Panel: O'CONNOR and GOODWIN, Appellate Immigration Judges; LIEBMANN, Temporary Appellate Immigration Judge.

O'CONNOR, Appellate Immigration Judge:

In a decision dated June 12, 2020, an Immigration Judge denied the respondent's motion to terminate his removal proceedings. The Immigration Judge also denied the respondent's application for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A) and 1231(b)(3)(A) (2018), and for protection under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The respondent has appealed from this decision and has filed a motion to remand. Upon our request, both parties submitted supplemental briefing on the respondent's removability. The appeal will be dismissed and the motion to remand will be denied.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Ghana who entered the United States in 1992 and adjusted to lawful permanent resident status in 2013. At some point, the respondent became involved in a multi-million dollar

conspiracy to defraud cell phone users. According to the superseding criminal indictment in the record, the respondent owned a company that provided specialized digital content for a fee to cell phone users via text message. The respondent was approached by owners of a mobile aggregator company, who devised a plan to unknowingly and automatically subscribe cell phone users to receive content from the respondent's company, which, in turn, charged these users a monthly premium fee through their mobile carrier. The cell phone users never consented or agreed to the auto-subscription or resulting fee. The individuals at the mobile aggregator, and the respondent, then obtained that fraudulent fee from the mobile carrier, which mistakenly believed that the cell phone users had authorized the purchase of this respondent's content. Based on this scheme, the respondent pled guilty in 2017 to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and § 1343 (2012).[1]

The Department of Homeland Security ("DHS") placed him in removal proceedings, charging him with removability under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2018), as a respondent convicted of an aggravated felony involving fraud or deceit under section 101(a)(43)(M)(i) of the Act, 8 U.S.C. § 1101(a)(43)(M)(i) (2018).[2] The DHS lodged an additional charge of removability under the same provision, charging the respondent with having been convicted of an aggravated felony attempt or conspiracy under section 101(a)(43)(U) of the Act. The DHS also submitted an additional factual allegation: that the respondent was ordered to pay forfeiture traceable to his criminal offense in the amount of $346,717.08.

---

[1] Although the respondent pled guilty under the conspiracy provision in 18 U.S.C. § 1349, the judgment of conviction issued by the United States District Court for the Southern District of New York contained a clerical error, inadvertently stating that he was convicted under 18 U.S.C. § 1343, which defines the offense of fraud by wire, radio, or television. The district court later corrected the clerical error regarding the statute of conviction. The respondent has not demonstrated he was prejudiced by this clerical error because it is apparent from the record that all parties understood that the respondent was convicted under "conspiracy to commit wire fraud," despite the clerical error regarding the statute number. Additionally, the respondent admitted the allegation in the notice to appear that he was convicted of this offense and the charges of removability remain the same. Likewise, the respondent was not prejudiced by his prior counsel's purported failure to inform the court of this clerical error. *See Flores v. Barr*, 930 F.3d 1082, 1087 (9th Cir. 2019) (per curiam) (acknowledging that a respondent must demonstrate that he or she suffered prejudice as a result of his or her counsel's deficient performance).

[2] The DHS also charged the respondent under section 237(a)(2)(A)(i) of the Act for having been convicted of a crime involving moral turpitude within 5 years after admission, but this charge was later withdrawn.

The respondent denied all charges and two of the factual allegations concerning the amount of restitution and/or forfeiture he was ordered to pay traceable to his offense. He applied for asylum, withholding of removal, and protection under the Convention Against Torture.

The Immigration Judge found the respondent removable as charged and concluded that his conviction is one for a particularly serious crime that bars him from applying for asylum and withholding of removal under the Act and the Convention Against Torture. The Immigration Judge also concluded that the respondent had not met his burden to establish eligibility for deferral of removal under the Convention Against Torture.

## II. REMOVABILITY

The DHS has the burden of proving by "clear and convincing evidence" that is "reasonable, substantial, and probative," section 240(c)(3)(A) of the Act, 8 U.S.C. § 1229a(c)(3)(A) (2018), that the respondent is removable as charged as "[an] alien who is convicted of an aggravated felony," section 237(a)(2)(A)(iii) of the Act. Section 101(a)(43)(M)(i) of the Act defines an aggravated felony as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."

The parties do not dispute that the respondent's conviction involved fraud or deceit. Therefore, the only remaining issue is whether his conviction resulted in a loss to his victim or victims exceeding $10,000. We review whether the respondent's offense constitutes an aggravated felony under a de novo standard. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021).

To determine if the loss to the respondent's victims exceeded $10,000, we apply the "circumstance-specific approach." *Nijhawan v. Holder*, 557 U.S. 29, 38–39 (2009). This approach requires us to "look to the facts and circumstances underlying an offender's conviction." *Id.* at 34. Under recent case law from the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises, we are not limited to reviewing a specific set of documents under a circumstance-specific approach; rather, we "are generally free to consider any admissible evidence" to determine the loss amount. *Orellana v. Mayorkas*, 6 F.4th 1034, 1041 (9th Cir. 2021). However, in doing so we must focus narrowly on loss amounts that are tethered to the counts of conviction. *Nijhawan*, 557 U.S. at 42; *see also Orellana*, 6 F.4th at 1043.

It is well established that an order of restitution may be relied upon to determine if the loss to the victim was greater than $10,000, as long as that order is sufficiently tethered to the convicted conduct and shows the actual loss from the offense of conviction. *See Nijhawan*, 557 U.S. at 42–43 (noting the restitution order demonstrates that the losses to the victims were greater

than $10,000); *see also Fan Wang v. Att'y Gen. of U.S.*, 898 F.3d 341, 349–50 (3d Cir. 2018) (considering the information, plea colloquy, presentence investigation, total loss specified in the judgment, and the restitution order in determining that the loss to the victim exceeded $10,000).  The respondent argues that, unlike an order of restitution, we cannot rely on an order of forfeiture to determine whether a convicted offense involved a loss to the victims exceeding $10,000.

For the following reasons, we conclude that the amount of forfeiture, like the amount of restitution, may be considered to determine the amount of loss to the victims under section 101(a)(43)(M)(i) if the proceeds received are sufficiently tethered and traceable to the conduct of conviction.  Forfeiture is a punitive tool used by the Government in sentencing to "separat[e] a criminal from his ill-gotten gains." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 629 (1989).  In practice, "an order of forfeiture may not feel much different from an order of restitution, because both orders contemplate cash payments in similar amounts." *United States v. Torres*, 703 F.3d 194, 203 (2d Cir. 2012).  However, restitution is meant to compensate victims for harm suffered, while forfeiture is a punishment to the defendant, meant to take away the proceeds received from the criminal actions.  *See id.*  Restitution and forfeiture may be ordered "in the same or similar amounts" because "restitution is calculated based on the victim's loss, while forfeiture is based on the offender's gain." *United States v. McGinty*, 610 F.3d 1242, 1247 (10th Cir. 2010) (citation omitted).  Thus, if the loss the victims experienced is equal to the proceeds the offender gained, then the amount ordered for forfeiture will be similar to the amount of restitution ordered.

Only property closely tied to the criminal conduct and tainted by the crime can be subject to forfeiture. *See United States v. Thompson*, 990 F.3d 680, 687 (9th Cir. 2021).  This concept is embodied in the Federal statutes governing forfeiture, requiring in every instance the tainted property be identified as being related to the criminal actions and then removed from the defendant.  *See* 18 U.S.C. § 982 (2018); 21 U.S.C. § 853 (2018); *see also* 18 U.S.C. § 981 (2018) (listing property subject to civil forfeiture, which can be ordered in criminal proceedings through 28 U.S.C. § 2461 (2018)).

Additionally, in conspiracy convictions, only the proceeds personally acquired by an individual conspirator may be subject to forfeiture—there is no joint and several liability. *See Honeycutt v. United States*, 137 S. Ct. 1626, 1632 (2017) (determining that forfeiture is only limited to tainted property and therefore "does not countenance joint and several liability, which, by its nature, would require forfeiture of untainted property").  Therefore, in application, only specific proceeds received by the defendant can be subject

to forfeiture, rather than the amount that was received by the entire criminal enterprise.

We therefore conclude that the DHS can meet its burden of demonstrating a loss in excess of $10,000 to the victims of an offense involving fraud or deceit under section 101(a)(43)(M)(i) by showing that a respondent was subject to criminal forfeiture for such an amount and that the forfeiture ordered was traceable and sufficiently tethered to the conviction. *See Chiao Fang Ku v. Att'y Gen. U.S.*, 912 F.3d 133, 140 (3d Cir. 2019) (considering a forfeiture allegation contained in the information and holding that a conviction under 18 U.S.C. § 1343 constituted an aggravated felony under section 101(a)(43)(M)(i)); *Eversley-MacClaren v. Holder*, 578 F. App'x 664, 666 (9th Cir. 2014) (determining that the Board appropriately relied on a forfeiture order, along with other sentencing documentation, to find the loss to the victims exceeded $10,000 under section 101(a)(43)(M)(i)); *cf. Barikyan v. Barr*, 917 F.3d 142, 146–47 (2d Cir. 2019) (holding that an order of forfeiture showing a respondent laundered more than $10,000, established that he was convicted of aggravated felony money laundering pursuant to section 101(a)(43)(D) of the Act).

In the instant case, the respondent was convicted of conspiracy to commit wire fraud under 18 U.S.C. §§ 1349 and 1343. He agreed in his plea agreement that he was subject to forfeiture for his offense under 18 U.S.C. § 981(a)(1)(C) (subjecting to forfeiture all property derived from proceeds traceable to the offense, or a conspiracy to commit the offense). *See Thompson*, 990 F.3d at 683 (involving a defendant convicted under 18 U.S.C. §§ 1349 and 1343 who was subject to forfeiture under 18 U.S.C. § 981(a)(1)(C)); *United States v. Day*, 524 F.3d 1361, 1375–76 (D.C. Cir. 2008) (describing when a forfeiture order is appropriate under 18 U.S.C. § 981(a)(1)(C)). The sentencing judge applied the Supreme Court's decision in *Honeycutt* in determining the forfeiture amount, specifically linking this amount to proceeds directly traceable to the respondent. *See Thompson*, 990 F.3d at 689 (determining *Honeycutt* applies to forfeiture under 18 U.S.C. § 981(a)(1)(C)); *see also Honeycutt*, 137 S. Ct. at 1632–35 (holding that forfeiture is limited to property or proceeds in the defendant's possession that are directly traceable to his or her conduct). According to the amended judgement, the respondent was ordered to pay "[f]orfeiture traceable to the offense, in the amount of $346,717.08." The amended judgment and the letter from the Federal prosecutor both explicitly state that the $346,717.08 forfeiture amount was traceable to the respondent's criminal conduct of conspiring to defraud cell phone customers.[3] This amount is thirty-four times greater than $10,000.

---

[3]   The respondent asserts that the prosecutor's letter is not sufficiently reliable to establish that he agreed to the $346,717.08 forfeiture amount. However, as we previously noted,

Beyond the forfeiture amount, other evidence supports the Immigration Judge's finding that the respondent's conviction resulted in a loss to the victims greater than $10,000. The respondent, through his criminal defense counsel, admitted in his plea deal that his actions caused a loss greater than $550,000 to his victims, resulting in a sentencing enhancement. U.S. Sentencing Guidelines Manual § 2B1.1(b)(1)(H) (U.S. Sentencing Comm'n 2017) (providing for a 14-level enhancement when the loss to the victims is greater than $550,000 but less than $1.5 million). The district judge recognized this admission during the sentencing hearing. Further, the respondent's indictment, to which he pled guilty, stated that the respondent received $600,000 in gross payments from the mobile aggregator, a "significant portion" of which came from auto-subscription proceeds obtained from the cell phone customers. Moreover, the prosecutor's letter to the district judge, relaying the amount of forfeiture agreed upon, states that the Government intended to distribute that money to the victims upon their identification, indicating that the amount of forfeiture was directly attributable to the amount the victims lost. *See* 18 U.S.C. § 981(e)(6) (explaining that the Government may transfer forfeited property "as restoration to any victim of the offense giving rise to the forfeiture").

The respondent argues that we cannot consider the forfeiture amount as an indication of the loss to his victims because the forfeiture order incorrectly listed legitimate funds, including funds he was given as advance payments during a time in which he claims he believed the scheme was legal. The respondent additionally argues that he invested some of his own money into his company, which was inappropriately included in the forfeiture calculation.

Whether or not the forfeiture amount included legitimate funds was a topic for consideration during the respondent's sentencing hearing. The prosecutor asserted that the respondent should be ordered to pay $600,000 in forfeiture, which the Government claimed was the amount that the respondent actually received in payments. However, the respondent's

---

when applying the circumstance-specific approach we may consider any admissible documents. *See Orellana*, 6 F.4th at 1041. In immigration proceedings, the test for admissibility is whether the evidence is probative, reliable, and fundamentally fair to the parties. *See Matter of Y-S-L-C-*, 26 I&N Dec. 688, 690 (BIA 2015). The respondent has not demonstrated that the letter from the prosecutor is inadmissible in this regard—the letter appeared on letterhead from the prosecutor and was sent to the respondent's criminal counsel, resulting in the amended judgment including the forfeiture order. Additionally, the respondent has not provided sufficient evidence that he did not, in fact, agree to this forfeiture amount, or that the prosecutor's letter does not accurately reflect the parties' understanding of the amount traceable to the respondent's conduct that resulted in a loss to his victims. Therefore, we find the letter to be appropriately reliable to substantiate the amount of forfeiture the respondent was ordered to pay.

criminal defense counsel opposed that amount, claiming that $600,000 was an incorrect number. Rather, the defense attorney argued that the amount traceable to the respondent's criminal actions was $346,000, minus $150,000 that went to a coconspirator. The respondent's criminal defense counsel thus asserted that the correct forfeiture amount, which reflects the tainted money gained by the respondent, should have been $236,000.[4]

Accordingly, even if the district court inappropriately included legitimate funds in the forfeiture determination, the respondent's own defense counsel agreed that the respondent received at least $236,000 in fraudulent payments from his victims, an amount well in excess of $10,000. We need not determine the exact amount of loss, as long as there is no clear error in the Immigration Judge's determination that the loss to the victims was greater than $10,000. Because the Immigration Judge's findings are not clearly erroneous, we agree with the Immigration Judge that the DHS met its burden of establishing the $10,000 loss requirement under section 101(a)(43)(M)(i), and the respondent's arguments to the contrary are unavailing.

Finally, the respondent argues that we cannot rely on the forfeiture amount because the victims of his crime were never identified. However, section 101(a)(43)(M)(i) of the Act merely requires a "loss to the victim or victims"; it does not require that the exact identity of the victim or victims be known. The respondent fails to cite any authority establishing that victim identification is an element of section 101(a)(43)(M)(i).

In any event, it is clear from the record that there were victims of the respondent's crime. Indeed, the sentencing judge applied an enhancement to the respondent's conviction because there were 10 or more victims, specifically taking time to explain to the respondent the harm that his actions may have had on his victims. We therefore agree with the Immigration Judge that the DHS met its burden of establishing by clear and convincing evidence that the respondent has been convicted of an aggravated felony involving fraud or deceit under section 101(a)(43)(M)(i) of the Act in which the loss to the victims exceeded $10,000.[5]

---

[4]  We note that, before the respondent entered into an agreement with the prosecutors regarding the forfeiture amount, the district judge was inclined to agree with the Government that the amount traceable to the respondent's offense was $600,000.

[5]  Although the respondent argues that his conviction is not sufficiently final for immigration purposes because he filed an appeal from his criminal conviction, the respondent has not provided sufficient evidence that an appeal has been filed and is still pending. *See Matter of J.M. Acosta*, 27 I&N Dec. 420, 432 (BIA 2018) (holding that a respondent must come forward with evidence that an appeal of a conviction has been filed within the prescribed deadline). *But see Brathwaite v. Garland*, 3 F.4th 542 (2d. Cir. 2021) (disagreeing, in part, with our holding in *Matter of J.M. Acosta*). In fact, the DHS submitted information that the respondent's appeal of his criminal conviction to the Second Circuit has been dismissed. Therefore, the respondent's conviction is sufficiently final for

We additionally conclude that the respondent's conviction under 18 U.S.C. §§ 1349 and 1343, constitutes an aggravated felony under section 101(a)(43)(U) of the Act.  First, the DHS has shown that the respondent was convicted of generic conspiracy under section 101(a)(43)(U) based on his conviction for Federal conspiracy under 18 U.S.C. § 1349.  Second, as noted, there is no dispute that the offense underlying this conspiracy involved "fraud or deceit" within the meaning of section 101(a)(43)(M)(i).  Third, it is evident from the record that the potential loss to the victims exceeded $10,000.  *See Matter of S-I-K-*, 24 I&N Dec. 324, 326 (BIA 2007) (outlining a "three-fold burden" the DHS must bear to establish that a respondent is removable for an aggravated felony under sections 101(a)(43)(M)(i) and (U)).  Accordingly, we will affirm the Immigration Judge's conclusion that the respondent is removable as charged under section 237(a)(2)(A)(iii) of the Act.

## III.  RELIEF AND PROTECTION FROM REMOVAL

### A.  Particularly Serious Crime

We agree with the Immigration Judge that the respondent's conviction for conspiracy to commit wire fraud constitutes a particularly serious crime barring asylum and withholding of removal under the Act and under the Convention Against Torture.  *See* sections 208(b)(2)(A)(ii), (B)(i) 241(b)(3)(B)(ii) of the Act; 8 C.F.R. § 1208.16(d)(2) (2021).  The Act prohibits the respondent from obtaining asylum or withholding of removal if he has "been convicted by a final judgment of a particularly serious crime [and is] a danger to the community of the United States."  Sections 208(b)(2)(A)(ii), 241(b)(3)(B)(iii) of the Act.  Where the record "indicates that one or more of the grounds for mandatory denial of the application for relief may apply, the [applicant] shall have the burden of proving by a preponderance of the evidence that such grounds do not apply."  *Matter of M-B-C-*, 27 I&N Dec. 31, 33 (BIA 2017) (emphases omitted) (quoting 8 C.F.R. § 1240.8(d) (2016)).

As discussed above, the respondent's conviction for conspiracy to commit wire fraud is a conviction for an aggravated felony.  This conviction renders the respondent statutorily ineligible for asylum because it is one for a particularly serious crime.  *See* sections 208(b)(2)(A)(ii), (B)(i) of the Act.  Because the respondent was not sentenced to an aggregate term of imprisonment of at least 5 years, however, his conviction is not automatically

immigration purposes, and the respondent was not prejudiced by prior counsel's alleged error in failing to inform the court of the purported lack of finality to his conviction.  *See Flores*, 930 F.3d at 1087.

one for a particularly serious crime for purposes of withholding of removal. *See* section 241(b)(3)(B) of the Act.

However, our analysis does not end there.  We may conclude that an offense is a particularly serious crime based on the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction.  *See Matter of N-A-M-*, 24 I&N Dec. 336, 342 (BIA 2007), *aff'd*, *N-A-M- v. Holder*, 587 F.3d 1052 (10th Cir. 2009); *Matter of Frentescu*, 18 I&N Dec. 244, 247 (BIA 1982), *superseded by statute in part*, former section 243(h) of the Act, 8 U.S.C. § 1253(h) (1994), *as recognized in Miguel-Miguel v. Gonzales*, 500 F.3d 941, 946 (9th Cir. 2007).  Although offenses against persons are more likely to be categorized as particularly serious crimes, crimes against property may also be found to be particularly serious.  *Matter of Frentescu*, 18 I&N Dec. at 247.  Additionally, aggravated felonies are "one of the types of crimes 'most likely to be' particularly serious."  *Bare v. Barr*, 975 F.3d 952, 962 (9th Cir. 2020) (citation omitted).

The nature of the respondent's conviction, which involves attempting or conspiring to obtain money or property through fraud, brings it within the ambit of a particularly serious crime.  *See* 18 U.S.C. §§ 1343, 1349; *Matter of N-A-M-*, 24 I&N Dec. at 342; *see also Arbid v. Holder*, 700 F.3d 379, 385 (9th Cir. 2012) (affirming the Board's conclusion that mail fraud is a particularly serious crime).  Thus, we may consider all reliable information in determining whether the respondent's crime is particularly serious.  *See Bare*, 975 F.3d at 964–65; *Matter of N-A-M-*, 24 I&N Dec. at 342.

As noted, the respondent was convicted based on his involvement in a multi-million dollar conspiracy to defraud cell phone users.  Specifically, the respondent joined his coconspirators in a plan to register cell phone users, without their knowledge or approval, to receive digital content from the respondent's company, which in turn charged the cell phone users a monthly premium fee for that content through their mobile carrier.  The respondent and his coconspirators then obtained the fraudulent fee from the mobile carrier.  The respondent was sentenced to 33 months in prison for this conduct and ordered to pay forfeiture in the amount of $346,717.08, which was traceable to his conduct.

The Immigration Judge considered the respondent's intentional involvement in the criminal enterprise, the amount the respondent received from the scheme, and the length of the respondent's sentence for imprisonment.  Considering the totality of the circumstances, we agree with the Immigration Judge that the respondent has been convicted of a particularly serious crime.  *See Arbid*, 700 F.3d at 385 (concluding that a complex scheme to defraud victims of nearly $2 million that resulted in a sentence of 16 months of imprisonment and a restitution order of $650,000 was particularly serious).

The respondent asserts on appeal that he believed the business to be legitimate at first. However, he pled guilty to willfully and knowingly conspiring to defraud individuals. The respondent's plea of guilty is sufficient to constitute an admission that he knew he was defrauding his victims.[6] *See* Fed. R. Crim. P. 11(b)(3) (2018) (requiring the district court to determine that there is a factual basis for all elements of the charge before accepting a guilty plea). Additionally, the indictment states that the respondent was approached in 2012 by the mobile aggregator in order to begin "auto-subscribing" customers to his content, which he then did—a process that necessarily involves defrauding the cell phone customers who did not authorize the subscription. We are therefore unpersuaded that the respondent was unaware of the illegality of the venture.

The respondent also argues that the seriousness of the crime is diminished because specific victims could not be identified. But a crime need not have an identifiable victim to be particularly serious. *See, e.g.*, *Matter of R-A-M-*, 25 I&N Dec. 657, 662 (BIA 2012) (concluding that the crime of child pornography is particularly serious because, even though the respondent had not harmed an identifiable victim, his offense, by its nature, "contributed to the sexual abuse of children" generally). Further, the judge at the respondent's sentencing hearing emphasized that the respondent's criminal actions harmed 10 or more real people.

We likewise find unavailing the respondent's argument that his conviction was not serious because he was involved in the scheme for a shorter period of time than his coconspirators. Despite the respondent's shorter involvement, he nonetheless obtained $346,717.08 in "ill-gotten gains" from the fraudulent scheme. *Caplin & Drysdale, Chartered*, 491 U.S. at 629. Therefore, considering the nature and seriousness of the crime and the scope of the harm caused, we agree with the Immigration Judge that the respondent's conviction is for a particularly serious crime. He is therefore ineligible for asylum and withholding of removal under the Act and under the Convention Against Torture. *See* sections 208(b)(2)(A)(ii), (B)(i), 241(b)(3)(B)(ii) of the Act; 8 C.F.R. § 1208.16(d)(2).

## B. Convention Against Torture

The Immigration Judge also properly denied the respondent's request for deferral of removal under the Convention Against Torture. *See* 8 C.F.R. § 1208.17 (2021). The respondent contends on appeal that he will be tortured

---

[6] We note that while we may consider the facts of the respondent's conviction in determining whether his crime was particularly serious, we cannot "go beyond the judicial record to determine the [respondent's] guilt or innocence." *Matter of C-A-S-D-*, 27 I&N Dec. 692, 700 (BIA 2019) (citation omitted).

in Ghana because of his political beliefs and tribal affiliation. The respondent expressed his opposition to the ruling political party in an online manifesto while in the United States. In 2017, the Ghanaian police questioned his brother regarding the respondent's manifesto and his monetary assets, and then extorted the respondent's brother for money.

However, the respondent does not contest the Immigration Judge's finding that he did not experience past torture in Ghana. *See* 8 C.F.R. § 1208.16(c)(3)(i). We also discern no clear error in the Immigration Judge's factual finding that the respondent could avoid torture by relocating within Ghana. *See* 8 C.F.R. §§ 1003.1(d)(3)(i), 1208.16(c)(3)(ii). Further, we agree with the Immigration Judge's assessment that, even if the respondent is harmed upon his return to the country, the harm he would likely suffer would not amount to torture. *See* 8 C.F.R. § 1208.18(a)(2) (2021) ("Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture."); *see also Vitug v. Holder*, 723 F.3d 1056, 1066 (9th Cir. 2013) (affirming the Board's conclusion that beatings and economic deprivation did not rise to the level of torture).

We recognize, as the Immigration Judge did, that there are reports of corruption and abuse within the Ghanaian Government. However, these conditions are not specific to the respondent and are insufficient to meet the respondent's burden of proving it is more likely than not he will be tortured in Ghana. *See* 8 C.F.R. § 1208.16(c)(2); *see also Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010) (per curiam) (stating that generalized evidence of violence and crime in the country of removal is insufficient to satisfy the more likely than not standard for protection under the Convention Against Torture). Additionally, the 2019 country conditions report from the Department of State, which the respondent submitted as evidence in support of his claim, states that there were "no reports of political prisoners or detainees," that "tribal leaders and chiefs are empowered to regulate land access and usage within their tribal areas," and that "[v]illage and other traditional chiefs can mediate local matters and enforce customary tribal laws."[7] Because the evidence does not support the respondent's claim that it

---

[7] We may take administrative notice of the contents of the State Department report because it is an official document. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (providing that the Board may take administrative notice of the contents of official documents). Notably, the facts we cite above from the country conditions report, which the respondent submitted in support of his claim, existed at the time of the respondent's hearing and the respondent had an opportunity to address the contents of the report before the Immigration Judge. *Cf. Circu v. Gonzales*, 450 F.3d 990, 993–95 (9th Cir. 2006) (providing that due process requires a respondent be given notice that a document will be considered and an opportunity to explain why the document should not be considered).

is more likely than not he will be tortured in Ghana with the acquiescence of an official or an individual acting in an official capacity, we agree with the Immigration Judge that the respondent did not meet his burden of establishing his eligibility for Convention Against Torture protection.

## IV.  OTHER ISSUES

The respondent asserts on appeal that his due process rights were violated during his removal proceedings for a myriad of reasons.  First, the respondent asserts that he was not properly provided notice of the allegations and charges in the Form I-261 (Additional Charges of Inadmissibility/Deportability).  However, the Form I-261 was served on the respondent's counsel by regular mail, and notice to the respondent's counsel constitutes notice to the respondent.  *See* 8 C.F.R. § 1292.5(a) (2021); *see also Matter of Barocio*, 19 I&N Dec. 255, 259 (BIA 1985).  Moreover, contrary to the respondent's appellate assertion that he was not given the opportunity to address the new allegation and charge, the record indicates that the respondent's attorney denied the additional allegation and charge contained in the Form I-261.

The respondent additionally argues that the absence from the record of a digital audio recording for the hearing on April 13, 2020, violated his due process rights.  The record indicates, however, that the Immigration Judge remedied this error by conducting pleadings for a second time on June 12, 2020.  Thus, the respondent has not demonstrated that he was deprived of a full and fair hearing.  *See Gutierrez v. Holder*, 662 F.3d 1083, 1091 (9th Cir. 2011) (explaining that to establish the he or she was not afforded a full and fair hearing, a respondent must demonstrate that "the proceeding was 'so fundamentally unfair that [he or she] was prevented from reasonably presenting his [or her] case'" (citation omitted)).

The respondent also filed a motion to reopen because he allegedly received ineffective assistance of counsel.  We construe this motion as a motion to remand.  *See* 8 C.F.R. § 1003.2(c)(4) (2021).  In this motion, the respondent alleges his attorney before the Immigration Judge inappropriately submitted evidence regarding his order of forfeiture, did not sufficiently argue that his order of forfeiture was incorrectly calculated, and did not let the respondent personally contest the allegations and charges on his notice to appear.  These arguments challenge his prior counsel's strategic decisions and do not establish that prior counsel was ineffective.  *See Jurado v. Davis*, 12 F.4th 1084, 1100 (9th Cir. 2021) (noting that there is "a strong presumption of effective assistance of counsel . . . and wide latitude is given to . . . counsel in making tactical decisions"), *cert. docketed*, No. 21-6954 (U.S. Jan. 25, 2022); *Matter of B-B-*, 22 I&N Dec. 309, 310 (BIA 1998)

(noting that "subsequent dissatisfaction with a strategic decision of counsel is not grounds to reopen" based on ineffective assistance); *cf. United States v. Lopez-Chavez*, 757 F.3d 1033, 1042 (9th Cir. 2014) (finding ineffective assistance where counsel conceded removability when there was clear precedent establishing that the respondent was not removable as charged). As such, we will deny the respondent's motion to remand on the basis of ineffective assistance of counsel. Accordingly, the respondent's motion to remand is denied and his appeal is dismissed.

**ORDER:** The respondent's motion to remand is denied.

**FURTHER ORDER:** The respondent's appeal is dismissed.